COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Annunziata and
          Senior Judge Coleman
Argued at Richmond, Virginia


DEREK ELLIOTT TICE
                                        OPINION BY
v.   Record No. 1397-00-1         JUDGE SAM W. COLEMAN III
                                        MAY 21, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                 Charles E. Poston, Judge

        James O. Broccoletti (Jeffrey R. Russell;
        Zoby & Broccoletti, P.C., on briefs), for
        appellant.

        Paul C. Galanides, Assistant Attorney
        General (Randolph A. Beales, Acting Attorney
        General; Shelly R. James, Assistant Attorney
        General, on brief), for appellee.


     Derek Elliott Tice was convicted of rape and capital

murder.  Tice contends on appeal that the trial court erred by

giving an instruction over his objection which allowed the jury

to find him guilty of capital murder based upon the theory that

he acted in concert with others to rape or kill the victim but

without finding that he was an active or immediate killer and by

refusing to admit certain evidence that another person confessed

to the crimes.  We agree that the court erred by giving an

instruction that allowed the jury to find Tice guilty of capital

murder without finding that he was an active or immediate killer

of the victim.  Accordingly, we reverse and remand for a new

trial if the Commonwealth be so advised.  Because the
evidentiary issue is likely to arise again on retrial, we
address that issue.

## Background

On July 8, 1997, William Bosko returned home from a naval
deployment to find his wife, Michelle Moore-Bosko, dead in their
bedroom.  There were no signs of a struggle, and the apartment
was neat.  Michelle had died as a result of three penetrating
stab wounds to her chest and manual strangulation.  She had been
raped and had sustained several other non-lethal stab wounds.

Daniel Williams lived with his wife and Joseph Dick in the
apartment across from the Boskos.  Dick testified that on the
evening of Michelle's death he, Tice, Williams and others were
together at Williams' apartment when Williams said, "He wanted
to see what color [Michelle's] panties were."  The group
discussed going to Michelle's apartment.  Williams had visited
the Boskos frequently, sometimes at unusual hours asking to use
the phone.  They knocked on the Boskos' door but Michelle would
not let them inside her apartment.  Dick testified that they
remained outside the apartment in the parking lot talking with
one another when Omar Ballard joined the group.  Dick testified
that he did not know Ballard and only learned his name at a
later date.  Ballard knew Michelle through another friend who
lived at the apartment complex.  Dick testified that on the
second attempt to gain entry into the Boskos' apartment the men

-

tricked Michelle into opening the door and they "rushed" into the apartment and grabbed her.  Dick testified that they took Michelle directly to the bedroom where Williams first raped her while the other men held her down.  Dick testified that next the defendant Tice and then the other men took turns raping her.  Dick testified that after raping Michelle one of the men went to the kitchen, found a knife and each person then stabbed her.

Based upon Dick's admissions, the police questioned the defendant Tice.  Confronted with Dick's admissions, Tice gave a detailed confession in which he admitted he had raped and stabbed Michelle.  While Tice's confession corresponded in significant detail to Dick's confession and trial testimony, Tice never mentioned in his confession that Omar Ballard had joined the group.  Also, none of the latent fingerprints found at the scene matched Tice's fingerprints.  A blanket found on Michelle, fingernail clippings and PERK kit evidence were submitted for DNA analysis.  Robert Scanlon, a forensic scientist, testified that Tice was eliminated as the source of the DNA from the semen stain found on the blanket, the fingernail clippings, and of the DNA from Michelle's vaginal swabs of the PERK kit.  Scanlon testified, however, that Omar Ballard could not be eliminated as the source of the DNA found on the blanket, Michelle's fingernail clippings and vaginal swabs.

-

Ballard, who was called as a witness by the defense, testified that he was not involved in the murder and rape. However, he acknowledged that he had previously given two statements to the police in which he admitted that he alone raped and murdered Michelle. The trial court allowed defense counsel considerable latitude in asking Ballard about his two prior confessions. Nevertheless, Ballard repeatedly testified that he did not rape or murder Michelle, and he attempted to explain his two confessions by saying he "was not under oath" when he gave these statements. The trial judge permitted Ballard's testimony that he did not rape or murder Michelle and permitted extensive examination about his two prior out-of-court admissions that he alone had raped and murdered Michelle. However, the trial judge refused to admit, over defense counsel's objection, Ballard's two confessions. The two confessions contained some details from Ballard showing that he knew that Michelle had been sexually assaulted, strangled, and stabbed multiple times with a knife from the kitchen.

Defense counsel also attempted to ask Ballard about a letter he allegedly had written to a person named Karen in which Ballard made reference to having killed Michelle. The trial judge sustained the Commonwealth's objection to any testimony related to the letter. Defense counsel proffered the letter as part of the record. The trial judge disallowed defense

-

counsel's questioning of Ballard about the letter and disallowed

the proffered letter into evidence.

<u>Jury Instruction</u>

The trial court charged the jury with Instruction 11, which

provided in pertinent part:

> The defendant is charged with capital
> murder.  The Commonwealth must prove beyond
> a reasonable doubt each of the following
> elements of that crime:
> (1) That the defendant or someone
> acting in concert with him, killed Michelle
> Moore-Bosko . . . .

The trial court also instructed the jury on a person's criminal

responsibility for concert of action in Instruction 12 and for

being a principal in the first and second degree in Instruction

14.  Instruction 12 told the jury:

> If there is concert of action with the
> resulting crime one of its incidental
> probable consequences, then whether such
> crime was originally contemplated or not,
> all who participate in any way in bringing
> it about are equally answerable and bound by
> the acts of every other person connected
> with the consummation of such resulting
> crime.

Instruction 14 stated:

> A principal in the first degree is the
> person who actually commits the crime.  A
> principal in the second degree is a person
> present, aiding and abetting, by helping in
> some way in the commission of the crime.
> Presence and consent alone are not
> sufficient to constitute aiding and
> abetting.  It must be shown that the
> defendant intended his words, gesture,
> signals or actions to in some way encourage,

-

advise, or urge, or in some way help the
person committing the crime to commit it.
A principal in the second degree is
liable for the same punishment as the person
who actually committed the crime, except
that a principal in the second degree to
capital murder shall be convicted and
punished as though the offense were murder
in the first degree.

On appeal, appellant asserts that the language in

Instruction 11 "or someone acting in concert with him"

impermissibly lowered the standard of proof for capital murder.

He contends that this language, when considered with Instruction

12, allowed the jury to find him guilty of capital murder if he

acted in concert with others to rape Michelle and as a

consequence of the rape the others killed her without his direct

participation.  The Commonwealth argues that Tice failed to

state this ground when he objected to Instruction 11 and that he

is procedurally barred pursuant to Rule 5A:18 from raising this

issue on appeal.

"The primary function of Rule 5A:18 is to alert the trial

judge to possible error so that the judge may consider the issue

intelligently and take any corrective actions necessary to avoid

unnecessary appeals, reversals and mistrials."  Martin v.

Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992)

(en banc).  During consideration of the instruction, Tice

objected to the addition of the language "or someone acting in

concert with him" in Instruction 11.  Tice specifically argued

that the holding in Strickler v. Commonwealth, 241 Va. 482, 404

-

S.E.2d 227 (1991), required proof that he was an "active and immediate participant" in killing Michelle in order to be guilty of capital murder.  Tice specifically identified for the trial judge the alleged error in Instruction 11 and cited cases in support of that position.  Thus, Tice preserved the issue for appeal.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citation omitted).

Except in the case of murder for hire, only the actual perpetrator of the crime may be convicted of capital murder. Johnson v. Commonwealth, 220 Va. 146, 150, 255 S.E.2d 525, 527 (1979).  "Thus, neither an accessory before the fact nor a principal in the second degree may be so convicted."  Cheng v. Commonwealth, 240 Va. 26, 42, 393 S.E.2d 599, 608 (1990). However, a defendant who "jointly participated in [a] fatal beating" is an "immediate perpetrator" of the crime and is guilty of capital murder.  Coppola v. Commonwealth, 220 Va. 243, 256-57, 257 S.E.2d 797, 806-07 (1979).  "[W]here two or more persons took a direct part in inflicting fatal injuries, each joint participant is an 'immediate perpetrator' for purposes of the capital murder statutes."  Strickler, 241 Va. at 495, 404 S.E.2d at 235 (citation omitted).  However, where two or more

-

people act in concert to commit one felony, and as an incidental consequence of that felony one of the criminals murders a victim without the direct or joint participation of the other in inflicting the fatal wounds, the person who only acted in concert to commit the first felony is guilty of first degree murder and not capital murder.

Instruction 11 as modified and Instruction 12 permitted the jury to find Tice guilty of capital murder if the jury determined that Michelle was killed as an "incidental probable consequence" by "someone acting in concert with [Tice] to commit rape" even though Tice may have taken no active or immediate action in killing Michelle. Concert of action has been defined as "[a]ction that has been planned, arranged, adjusted, agreed on and settled between parties acting together pursuant to some design or scheme." Rollston v. Commonwealth, 11 Va. App. 535, 542, 399 S.E.2d 823, 827 (1991). "All participants in such planned enterprises may be held accountable for incidental crimes committed by another participant during the enterprise even though not originally or specifically designed," Berkeley v. Commonwealth, 19 Va. App. 279, 283, 451 S.E.2d 41, 43 (1994), except where the incidental crime is capital murder. To be guilty of a crime under a concert of action theory, a person does not need to be an "active participant" or "immediate perpetrator," but is guilty due to the prior agreement between the parties. Instruction 11 as modified and Instruction 12

-

permitted the jury to find Tice guilty of capital murder without finding that he was an active participant or immediate perpetrator in the murder. Instruction 11 as modified was not an accurate statement of the law, and the trial judge erred in overruling Tice's objection to it. Such error was not harmless because the instruction permitted the jury to convict Tice of capital murder by finding that he acted in concert to rape Michelle but without finding that he was an active participant in the murder.

### Third-Party Admissions and Confessions

Because we reverse the conviction on the error in giving Jury Instruction 11 as modified, on remand the admissibility of Ballard's two confessions and his letter to Karen will inevitably arise upon retrial.

Tice's defense was that Ballard alone committed the rape and murder. Tice also sought to use Ballard's confessions and letter to Karen to discredit his own confession. Tice asserts that Ballard's confessions and letter were essential to the theory of his defense and that the trial judge erred in limiting his direct examination of Ballard. Tice also asserts that the trial judge erred in denying the admission into evidence of the confessions and letter to Karen because it was for the jury to decide their credibility.

A statement against a declarant's penal interest at the time made is admissible under the declaration against interest

exception to the hearsay prohibition.  Morris v. Commonwealth, 229 Va. 145, 147, 326 S.E.2d 693, 694 (1985).  However, before such a statement is admitted the party offering it must prove that the declarant is unavailable and that the declaration was reliable.  Ellison v. Commonwealth, 219 Va. 404, 408, 247 S.E.2d 685, 688 (1978).

Ballard's two confessions were statements against his penal interest because in them he admitted that he alone committed the crimes.  The trial judge found that the confessions were reliable and permitted Tice's attorney to question Ballard extensively about his confessions to the police.  Ballard admitted that he had confessed to killing Michelle, but explained that the statements were not made under oath.  At the conclusion of Ballard's testimony the trial judge denied admission into evidence of the written confessions.  Since Ballard testified extensively concerning the content of his confessions and did not invoke his privilege under the Fifth Amendment, he was not unavailable, which was required for the written confessions to be admitted into evidence.  The trial judge did not err in sustaining the Commonwealth's objection to the admission into evidence of Ballard's two written confessions.

After defense counsel completed his questions of Ballard concerning his confessions, he asked Ballard if he had written a letter to Karen.  Relying upon Morris, the attorney for the

-

Commonwealth objected to any testimony regarding the letter because there was no third party to the statement. The trial judge sustained the objection. Tice argues that the letter to Karen was also admissible. As noted above, Ballard was available to testify and Tice has failed to satisfy the "unavailability" requirement for the admission of the letter into evidence as a declaration against his penal interest.

> "In Virginia, evidence that a crime was actually committed by someone other than the accused is admissible for the purpose of generating a reasonable doubt of the guilt of the accused." Evidence tending to show that someone other than the defendant committed the crime generally raises a factual question for the jury. A defendant is entitled to present his version of the facts along with that of the prosecution so the jury may decide where the truth lies.

Oliva v. Commonwealth, 19 Va. App. 523, 526-27, 452 S.E.2d 877, 880 (1995) (citations omitted). "[T]he admissibility of circumstantial evidence tending to prove that a third party committed the crime is left to the sound discretion of the trial judge." Id. at 527, 452 S.E.2d at 880.

Ballard admitted in the letter to Karen that he murdered Michelle. Since Tice's defense was that Ballard alone committed the rape and murder, the contents of the letter pointed directly to the guilt of a third party and was a factual question for the jury to decide. Tice should have been permitted to question Ballard whether he admitted to Karen that he committed the crimes.

-

For the foregoing reasons, Tice's convictions for capital murder and rape are reversed.  The case is remanded for retrial if the Commonwealth be so advised.

Reversed and remanded.