COURT OF APPEALS OF VIRGINIA


Present:  Judge Annunziata, Senior Judges Willis and Bray*
Argued at Alexandria, Virginia


MICHAEL WAYNE HASH

MEMORANDUM OPINION** BY

v.    Record No. 1290-01-4        JUDGE RICHARD S. BRAY
                                        SEPTEMBER 3, 2002

COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF CULPEPER COUNTY
                  John R. Cullen, Judge

          Michael T. Hemenway; Richard A. Davis, for
          appellant.

          Susan M. Harris, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     A jury convicted Michael Wayne Hash (defendant) of capital

murder in violation of Code § 18.2-31.  On appeal, defendant

complains the trial court erroneously (1) failed to instruct on

the Commonwealth's burden to prove beyond a reasonable doubt he

was the "triggerman" or "principal in the first degree," (2)

instructed the jury on the definition of "[w]illful, deliberate,

and premeditated," (3) refused to investigate allegations of

juror misconduct, and (4) overruled his motion to "set aside the

---

     * Senior Judges Willis and Bray participated in the hearing
and decision of this case prior to the effective date of their
retirement on August 31, 2002 and thereafter by designation as a
senior judge pursuant to Code § 17.1-401.

     ** Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

verdict" as a result of "prosecutorial misconduct."  Defendant also challenges the sufficiency of the evidence to support the conviction.  Finding no reversible error, we affirm the trial court.

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to a disposition of the appeal.  In accordance with well established principles, we review the evidence in the light most favorable to the party prevailing below, the Commonwealth in this instance. Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

## I.  BACKGROUND

Prior to trial, defendant moved for discovery pursuant to Rule 3A:11, seeking disclosure by the Commonwealth of "all information of an exculpatory, mitigating or otherwise favorable nature" and "all evidence affecting the credibility of any prosecution witness, including . . . any plea negotiations, promise, or threat (direct or implied) made to any potential prosecution witness by or on behalf of the Commonwealth or any officer or agency thereof."  Responding, the Commonwealth provided statements of potential witnesses to police and other materials and declared an "open file policy" to defendant's counsel.

Trial commenced on February 6, 2001.  The Commonwealth's evidence established that Thelma B. Scroggins (victim) had been

- 2 -

murdered on July 13, 1996, killed by "[f]our gunshot wounds," "three" to "the left side of [her] face" and one "to the back of the head."  The medical examiner described the wounds and noted "slight burning directly around the skin surface" indicated contact with the "[gun] barrel" at "close range."  A "firearms examiner" determined the four bullets recovered from the victim's body were ".22 caliber," "fired from a firearm having a barrel rifled with four lands and grooves," "most likely . . . a rifle."

Testifying in behalf of the Commonwealth, Alesia Shelton (Shelton), defendant's cousin, recalled a discussion on the evening of July 13, 1996, between defendant and Jason Kloby (Kloby), a codefendant, during which the two referenced the "mail lady" and agreed "she should have never messed with them," and they should "make her suffer," "pour[] hot water on her," or "tie her up," and "do it tonight."  Four weeks after the murder, Shelton witnessed another conversation between defendant and Kloby "at the church across the street from [the victim's] house."  Kloby then admitted "he shot [the victim]," "handed the gun to [defendant] and . . . [defendant] shot her."  Reacting to Kloby's admissions, defendant "nodded his head" and, "laughing" "sarcastic[ally]," said, "Yes-yeah."

Eric Weakley, also a codefendant, testified that at "about eight or nine o'clock" on the evening of the murder, he accompanied defendant and Kloby to the victim's house.  Defendant

- 3 -

"knocked" at the door and, when she answered, defendant "asked if he could have a cup of sugar." The victim responded, "yeah, sure," "turned around," and defendant entered the home and "hit her broad side around th[e] side of the ear" with "[h]is fist," causing her to fall "to the ground." Kloby and defendant then "kick[ed] . . . and hit" the victim in the "face," "stomach" and "ribs," and Weakley and defendant "carried [her] back to her bedroom" and "propped her up" "on a door jamb." After deciding "[w]ho was going to shoot [the victim] first," defendant shot her "[t]wice in the ["left"] side of the head," and Kloby "fired a shot" "[a]round the same place." When the victim's "leg moved like . . . a convulsion or some type of spasm," Kloby "fired one shot in the back of the head," "the last shot." Defendant then "got in the car and left," and Weakley and Kloby fled in the victim's truck.

Paul Carter (Carter) recounted "[p]robably two or three" conversations with defendant, while the two shared a "cell block" at the Charlottesville Regional Jail, when defendant admitted he and "two other dudes" "shot" an "old lady twice" with a ".22 [caliber]" firearm and "took [her] vehicle." Defendant explained to Carter his "cousin" was "trying to tell on him," and, although "the other two dudes" "already gave statements on him," he "could [not] get convicted without a gun."

Denying involvement in the murder, defendant claimed he was with his "best friend," William Blithe, Jr., at the time of the offense. Defendant admitted a "waving acquaintance" with the victim, his "mail lady," and that he, Weakley and Kloby had, on several occasions, discussed robbing "somebody" "in the area" "who wasn't going to put up much of a fight," and "assumed" they were "talking about an old lady." However, defendant insisted he didn't "want to have anything to do with it."

Defendant objected to jury instructions proposed by the Commonwealth that embraced first-degree and second-degree murder, arguing "the Commonwealth's evidence . . . is that he pulled the trigger twice," and "[t]he defense evidence is that he wasn't there and . . . didn't do it." Thus, "no theory . . . of the case . . . would support an instruction on a lesser charge." Instead, defendant successfully urged the court to submit the issue to the jury only on "capital murder or not guilty."

Instructions submitted to the jury, without objection, included:

### Instruction No. 3

The defendant is charged with the crime of capital murder. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

(1) That defendant killed Thelma B. Scroggins; and

(2) That the killing was willful, deliberate and premeditated; and

- 5 -

> (3) That the killing occurred during
> the commission of robbery; . . . .

### Instruction No. 4

> "Willful, deliberate, and premeditated"
> means a specific intent to <u>attempt to kill</u>,
> adopted at some time before an <u>attempted
> killing</u>, but which need not exist for any
> particular length of time.

(Emphasis added).

Following conviction by the jury, together with a recommended sentence of life imprisonment, defendant filed a motion to set aside the verdict. In support of the motion, he presented evidence of an indictment charging Eric Weakley with "second-degree murder" and, over the Commonwealth's objection, the affidavits of four jurors affirming, in pertinent part, that

> [d]uring the jury deliberations and in
> reaching the guilty verdict, the members of
> the jury did not all agree that the
> defendant, Michael W. Hash, was the actual
> shooter of the victim, Thelma Scroggins.

During a subsequent hearing on the motion, defendant also contended the Commonwealth was required to prove him the "triggerman" or the "principal in the first degree to the murder." Thus, although such instruction was not offered either by defendant or the Commonwealth, defendant argued the court had "an affirmative duty" to admonish the jury on a "principle of law . . . vital to a[n] [accused]." Turning to the Eric Weakley indictment, defendant maintained the prosecutor failed to disclose "an understanding, albeit not necessarily reduced to writing,"

- 6 -

with Weakley, that Weakley would receive "a reduced charge or some other significant benefit in exchange for his agreement to testify . . . against the defendant." With respect to the affidavits, defendant asserted that the evidence "clearly" established the jury "did not agree unanimously . . . he shot the victim" and "either misunderstood" or "chose to disregard" the instructions, resulting in an "injustice."

Countering, the Commonwealth reminded the court that the competing "theor[ies] of the case" were "either the defendant shot and killed [the victim] or he wasn't there," not "that he was there, but he didn't pull the trigger or . . . there but . . . did not participate in the killing." Thus, "there was no evidence to support a requirement for a triggerman rule . . . instruction." While acknowledging that Weakley was indicted for second-degree murder, not capital murder, the Commonwealth contended the decision "to bring before a jury a lower charge" against Weakley followed trial of defendant and was not previously "contemplated," rendering disclosure unnecessary.

At the conclusion of the hearing, the court refused to summon the jury and inquire further into the verdict, finding "the alleged action by the jurors occurred within the confines of the jury room" and declined to set aside the verdict for the remaining reasons assigned by defendant. Defendant appeals to this Court.

## II. FAILURE TO GIVE JURY INSTRUCTION

Defendant first contends the trial court had "an affirmative duty" to instruct the jury on the Commonwealth's burden to prove beyond a reasonable doubt he was the "triggerman" or "principal in the first degree to the murder." We disagree.

> Under the . . . "triggerman" rule, only the actual perpetrator of a crime delineated in Code § 18.2-31 may be convicted of capital murder and subjected to the penalty of execution, except in the case of murder for hire. One who is present, aiding and abetting the actual murder, but who does not actually fire the fatal shot, is a principal in the second degree and may be convicted of no greater offense than first-degree murder.

Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986) (citations omitted); Tice v. Commonwealth, 38 Va. App. 332, 339, 563 S.E.2d 412, 416 (2002). However, "[t]here may be more than one principal in the first degree." Hancock v. Commonwealth, 12 Va. App. 774, 781, 407 S.E.2d 301, 305. Thus, the Supreme Court of Virginia "adhere[s] to the view that where two or more persons take a direct part in inflicting fatal injuries, each joint participant is an 'immediate perpetrator' for the purposes of the capital murder statutes." Strickler v. Commonwealth, 241 Va. 482, 495, 404 S.E.2d 227, 235 (1991); Tice, 38 Va. App. at 339, 563 S.E.2d at 416. See also Coppola v. Commonwealth, 220 Va. 243, 257 S.E.2d 797 (1979) (holding an

accused "jointly participat[ing] in [a] fatal beating" subject to conviction and punishment for capital murder).

Here, defendant's argument in support of a "triggerman" instruction is "premised upon the theory that the killing was accomplished by a sole perpetrator." Strickler, 241 Va. at 495, 404 S.E.2d at 235.  Viewed accordingly, the record provides no support for the instruction.  The Commonwealth's evidence, if believed, proved defendant and Kloby acted jointly to murder the victim, each firing two shots directly into her head.  Defendant denied involvement in the offense, relying upon an alibi defense.  Under such circumstances, "Instruction No. 3" properly informed the jury on the issues before the court, without implicating the extraneous triggerman principle.

### III.   ERRONEOUS INSTRUCTION

Defendant next contends the trial court erroneously instructed the jury on the meaning of "[w]illful, deliberate and premeditated."

"Instruction No. 4" defined "[w]illful, deliberate and premeditated" as "a specific intent to attempt to kill, adopted at some time before an attempted killing . . . ."  (Emphasis added). Defendant did not object to the instruction at trial but complains on appeal the jury was "misinformed and mislead" on "an essential element" of the offense, "result[ing] in a miscarriage of justice" that merits appellant relief.  The

- 9 -

Commonwealth concedes the instruction erroneously referenced "an attempted killing" but asserts Rule 5A:18 as a procedural bar to our consideration of the issue.

Rule 5A:18 provides, in relevant part:

> [n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

"'Under Rule 5A:18 we do not notice the trial errors for which no timely objection was made except in extraordinary situations when necessary to enable us to attain the ends of justice.'" Phoung v. Commonwealth, 15 Va. App. 457, 463, 424 S.E.2d 712, 716 (1992) (citation omitted).

> Whether we apply the bar of Rule 5A:18 or invoke the ends of justice exception, we must evaluate the nature and effect of the error to determine whether a clear miscarriage of justice occurred. We must determine whether the error clearly had an effect upon the outcome of the case. The error must involve substantial rights.

Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 11 (1989). "We have held that a clear miscarriage of justice has occurred when the error is 'clear, substantial and material.'" Phoung, 15 Va. App. at 464, 424 S.E.2d at 716 (citation omitted). "An error that is not important enough to affect the outcome of the trial is not 'material' but, rather is harmless error." Id. at 465, 424 S.E.2d at 716.

- 10 -

Here, defendant did not dispute the victim was murdered but simply denied involvement in the crime. The erroneous instruction did not relate to a finding that defendant killed her but, rather, to the issue of whether defendant committed the offense with the requisite intent. Eric Weakley, a participant in the crime, testified defendant shot the victim "[t]wice in the ["left"] side of the head," evidence corroborated by witnesses Shelton and Carter. Thus, the evidence clearly established the specific intent requisite to capital murder. Under such circumstances, the erroneous jury clearly did not "affect the outcome of the trial" and, therefore, was not material and provided no support for the "ends of justice" exception to Rule 5A:18.

## IV. REFUSAL TO INVESTIGATE

Defendant contends the court erroneously failed to conduct an evidentiary hearing to investigate the jury's deliberations and related verdict. Relying upon the four affidavits, defendant maintains the jury did not agree he was the "triggerman" or "principal in the first degree to the murder" and, therefore, "either misunderstood the instructions of the court," "chose to disregard [the] instructions," or were "misled or misinformed by the instructions."

In Jenkins v. Commonwealth, 244 Va. 445, 423 S.E.2d 360 (1992), the Supreme Court of Virginia affirmed a trial court's refusal to make a similar inquiry of jurors, reasoning that

> "Virginia has been more careful than most states to protect the inviolability and secrecy of jurors' deliberations. We have adhered strictly to the general rule that the testimony of jurors should not be received to impeach their verdict, especially on the ground of their own misconduct." "Generally, we have limited findings of prejudicial juror misconduct to activities of jurors that occur outside the jury room."

Id. at 460, 423 S.E.2d at 370 (citations omitted) (emphasis added). Thus, "[w]hether a trial court should examine jurors is a matter addressed to the court's sound discretion, and, absent an abuse of discretion, its decision will not be disturbed on appeal." Bradshaw v. Commonwealth, 228 Va. 484, 491, 323 S.E.2d 567, 571 (1984) (citation omitted).

Here, the matters subject of the affidavits clearly occurred "within the confines of the jury room." Jenkins, 244 Va. at 460, 423 S.E.2d at 370. Defendant has not alleged extraneous evidence or other improprieties tainted the deliberations, and the affidavits suggest no such misconduct either by the four jurors or others. Accordingly, the court properly declined to summon the jury and pursue further inquiry.

- 12 -

V.  EXCULPATORY EVIDENCE

Defendant maintains the prosecutor wrongfully failed to disclose plea agreements between the Commonwealth and Shelton, Eric Weakley and Carter and, further, a statement of Felton Weakley, Eric Weakley's brother, to police.  Defendant alleges "prosecutorial misconduct" requires reversal of the conviction. We disagree.

"The suppression of exculpatory evidence upon request violates due process where the evidence is material either to guilt or punishment . . . ."  MacKenzie v. Commonwealth, 8 Va. App. 236, 243, 380 S.E.2d 173, 177 (1989) (citations omitted).  However,

> failure to disclose [such] evidence requires reversal only if the evidence was "material," and evidence is "material" only if there is a reasonable probability that had the evidence been [timely] disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 244, 380 S.E.2d at 177 (first emphasis added). "[S]peculation and . . . 'conjecture'" will not support reasonable probability.  Id. at 245, 380 S.E.2d at 178.

Guided by such principles, we address defendant's arguments seriatim.

- 13 -

## A. PLEA AGREEMENTS

At trial, Shelton, Eric Weakley and Carter testified no offers, promises, or understandings with the Commonwealth existed with respect to their testimony against defendant. Although codefendant Weakley later entered into an agreement with the Commonwealth resulting in a guilty plea to a lesser offense, the attendant prosecutorial decision followed trial and conviction of defendant. Thus, defendant's claim is grounded in "speculation" and "conjecture" and unworthy of consideration.

## B. FELTON WEAKLEY STATEMENT

For the first time on appeal, defendant complains that disclosure of a "report" memorializing a September 27, 2000 interview with Felton Weakley, provided to defendant on "the last day [he] could conceivably use it for post trial motions," resulted in "extreme[] prejudic[e]" to him. Defendant contends the report, which "provided exculpatory information and could reasonably lead to additional exculpatory information," was untimely filed and of no utility in his defense. Assuming, without deciding, that the delayed disclosure constituted "misconduct," the material is not "exculpatory" in nature.

The report recounts a statement by Felton Weakley that Eric Weakley "occasionally" overnighted at his apartment. However, Felton Weakley "did not know if Eric came . . . the night of the murder" and "could not remember a time when Eric Weakley may have

arrived with blood on him or appearing . . . nervous or frightened."  Thus, the document neither provides evidence that tends to exonerate defendant nor suggests the existence of such evidence.  Defendant, therefore, failed to prove a reasonable probability that, had the report been disclosed, the result of the proceeding would have been different.  See id.

## VI.  SUFFICIENCY OF THE EVIDENCE

Finally, defendant challenges the sufficiency of the evidence to support the conviction, complaining "the conclusions of the fact finder on issues of witness credibility should be reversed because the testimony of the Commonwealth's witnesses was in . . . direct conflict" and, "in the case of Eric Weakley," was "inherently incredible."  He further contends the juror affidavits make "it . . . painfully clear that the fact finders did not find the Commonwealth's witnessess' testimony credible."  Again, we disagree.

In reviewing the sufficiency of the evidence, we consider the record "in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (citation omitted).

> [T]he fact finder is not required to accept entirely either the Commonwealth's or the defendant's account of the facts. Similarly, the fact finder is not required to believe all aspects of a defendant's statement or testimony; the judge or jury

- 15 -

> may reject that which it finds implausible, but accept other parts which it finds believable.

Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993) (citations omitted). Thus, "[t]he conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] . . . testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (en banc) (citations omitted). The judgment of the trial court will not be disturbed unless plainly wrong or unsupported by the evidence. See Code § 8.01-680.

Viewed accordingly, Eric Weakley's testimony established that, he, defendant and Kloby entered the victim's residence, and defendant shot the victim "[t]wice in the ["left"] side of the head." Weakley's recollection of the offense was corroborated in substantial detail by the testimony of Shelton, Carter and other evidence. The fact finder heard and considered the testimony, including evidence that discredited the Commonwealth's witnesses. When considered with the entire record, we are unable to find such evidence either "inherently incredible" or "unworthy of belief." Moyer, 33 Va. App. at 28, 531 S.E.2d at 590. Further, although defendant denied participating in the murder, the evidence proved otherwise, and the jury was entitled

to disbelieve him and conclude that "he lied to conceal his guilt."  <u>Dunbar v. Commonwealth</u>, 29 Va. App. 387, 394, 512 S.E.2d 823, 827 (1999).

Accordingly, we affirm the conviction.

<u>Affirmed.</u>