COURT OF APPEALS OF VIRGINIA


Present:    Judges Benton, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


HENRY ALLEN FUNKHOUSER, JR.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2165-04-4                      JUDGE JAMES W. BENTON, JR.
                                                         MAY 16, 2006
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
                        John E. Wetsel, Jr., Judge

            Roger A. Inger (Inger & Collins, P.C., on brief), for appellant.

            Richard B. Smith, Senior Assistant Attorney General (Judith
            Williams Jagdmann, Attorney General, on brief), for appellee.


       Henry Allen Funkhouser, Jr. appeals his conviction for involuntary manslaughter.  He

contends that the trial judge erred in refusing to grant an instruction on assault and battery.  We

hold that no independent evidence warranted a conviction of assault and battery, and, thus, the

trial judge did not err in refusing the instruction.

                                            I.

       When the trial judge refuses to grant an instruction requested by the defendant, "we view

the facts in the light most favorable to the defendant."  Commonwealth v. Sands, 262 Va. 724,

729, 553 S.E.2d 733, 736 (2001).  The evidence proved Robert Larrick lived in a house with

Henry Funkhouser's mother, her daughter, and Funkhouser.  On Sunday, October 20, 2002,

Funkhouser's mother returned home from a weekend trip and sought her neighbor's assistance

with opening her bathroom door.  When the neighbor entered the house and turned the handle on

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the bathroom door, it did not open.  He pushed hard on the unlocked door and found Larrick's body wedged behind the door.

Later while searching the house, investigators found a broken picture frame and glass in the bathtub of the bathroom where Larrick's body was located.  In the bedroom, they found a table leg with Larrick's blood.  On that table leg was a partial latent print that did not match Funkhouser's finger or palm prints.  Blood was on the bedroom's wall, and a chest of drawers was overturned.  An investigator noticed that Funkhouser's mother had a black eye and abrasions on her lip.

Funkhouser initially told investigators that he had not noticed anything unusual over the weekend of Larrick's death.  In a later interview at the police station, he said he heard a lot of noise Saturday night but did not go upstairs to investigate.  The investigator believed there were "differences" in Funkhouser's oral statements, and he suggested that Funkhouser write his recollection of events.  In the statement, Funkhouser wrote that he called his mother, who was in Pennsylvania, Saturday afternoon and told her the house was a mess and Larrick was drinking.  Later that night, he was using his computer in his downstairs bedroom when he heard "loud crashes and banging."  After the ruckus ended, he went to sleep.  The next day he called his mother again, told her he did not want to go home, and said he "feared for her if she came home because [Larrick] already hit her once."  He returned home late Sunday night, set his alarm to wake him for work the next day, and went to sleep.

When questioned about discrepancies between his oral and written statements, Funkhouser offered to write a second statement.  In this second statement, Funkhouser wrote:

> Saturday night . . . [Larrick] kept asking questions about my mom and I confronted him about hitting my mom and sister.  He got extremely angry and there was nothing I could do to stop it.  We were standing in the hall—he had a little to drink and went off. . . . I didn't want to hurt him but he wouldn't stop. . . . He hit me @ 14 times mostly using his fists.  I tried to stop him with anything I

could find.  It ended in the upstairs hallway.  The argument ended.
He fell in the bathroom after being hit with the stand. . . .  I wanted
to protect my mom, my sister, and I.  The argument was an
accident that I wanted to avoid, I didn't [intend] this brutality.  I
tried to help him. . . .  There was nothing I could do.

At trial, the Assistant Chief Medical Examiner testified that "Larrick's cause of death was blunt trauma to the head, neck, torso and extremities and contributing to his death was coronary arterial sclerosis."  She said Larrick's heart had severely blocked coronary arteries, a type of "long-standing heart disease."  She opined that Larrick's heart condition combined with the "stressful blunt trauma injuries" to his head, face, arms, and torso caused his death, even though the trauma injuries would not typically be fatal.  She explained that bruising he suffered caused a form of blood loss, which is stressful to the heart, and that "when stress occurs, changes occur in the body that require the heart to beat faster and harder, and Mr. Larrick's heart could not keep up."  The medical examiner opined that Larrick's heart stopped working "a minimum of hours" after he suffered the physical assault.

On cross-examination, Funkhouser's attorney asked if walking into furniture could have caused the wounds.  The medical examiner responded that this "would not likely result in the large areas and scattered areas of linear abrasions" on his body, but agreed it was possible that one or two of the leg bruises could have occurred in that manner.  She dated Larrick's bruising and scrapes as "recent" and "not more than a day or two old," but she could not pinpoint their exact ages.  When asked if stress is a necessary component of a heart attack, the medical examiner said the stress could be "less than in Mr. Larrick's case," and explained, "A heart attack is generally not an instantaneous event . . . . An arrhythmia is.  A heart attack forms over time."  She also added:

Mr. Larrick's amount of heart disease, did he not have all this
injury, could have resulted in an arrhythmia from some other stress
from some other type of condition.  However, in fact, Mr. Larrick

does have injuries into which he bled, meaning injuries that
occurred when his heart was beating.

Funkhouser testified and denied hitting Larrick. He testified that his mother told him Larrick hit her, but he said he did not confront Larrick. Funkhouser testified that he last saw Larrick Saturday morning before he went to work. He returned home after leaving work at 9:00 p.m. on Saturday and watched television. He heard "thud noises and glass breaking" but did not investigate because he was accustomed to hearing those sounds. He went to sleep about 1:00 a.m., arose the next morning, and went to work. He testified that the first written statement he gave the investigator essentially was true and that his second written statement was false. He explained that he confessed only in order to protect his mother and his sister from "go[ing] to jail."

The trial judge granted Funkhouser's motion to strike the charge of first-degree murder. He declined to give the jury an instruction on assault and battery, instructing them on second-degree murder, voluntary manslaughter, and involuntary manslaughter. The jury convicted Funkhouser of involuntary manslaughter.

## II.

Funkhouser contends that an instruction to the jury on assault and battery was mandatory because it is a lesser-included offense of murder and because the evidence raised the issue of assault and battery. The Commonwealth responds that no independent evidence warranted a conviction of assault and battery, and, thus, the trial judge properly refused the instruction.

Assault and battery is a lesser-included offense of homicide. See Blankenship v. Commonwealth, 193 Va. 587, 591-92, 70 S.E.2d 335, 337-38 (1952) (holding that the trial judge did not err in a murder case by instructing the jury on the lesser-included offenses of voluntary manslaughter, involuntary manslaughter, and assault and battery). An instruction for a lesser offense is not required, however, when the evidence warrants a conviction of the crime charged

and "no independent evidence" warrants a conviction of the lesser crime.  See Guss v. Commonwealth, 217 Va. 13, 14, 225 S.E.2d 196, 197 (1976) (affirming a robbery conviction where the trial judge did not give an assault and battery instruction).

"When reviewing jury instructions, an appellate court must ensure . . . that the 'instructions cover all issues' fairly raised by the evidence."  Mouberry v. Commonwealth, 39 Va. App. 576, 581, 575 S.E.2d 567, 569 (2003) (quoting Tice v. Commonwealth, 38 Va. App. 332, 339, 563 S.E.2d 412, 416 (2002)).  It is well settled, however, that "more than a scintilla of evidence is necessary to support a lesser-included offense instruction requested by the defendant."  Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998).  The jury's ability to reject evidence is not enough evidentiary support to require instructing the jury on the lesser offense.  Id. at 446-47, 507 S.E.2d at 77; see also Commonwealth v. Leal, 265 Va. 142, 147, 574 S.E.2d 285, 288 (2003) (affirming a conviction of maiming by mob because the trial judge did not err in ruling "the necessary quantum of independent evidence" did not exist to give an instruction for assault and battery by mob).

In Donkor, the defendant appealed his conviction for aggravated malicious wounding based on the trial judge's refusal to give a jury instruction on malicious wounding, a lesser-included charge.  256 Va. at 444, 507 S.E.2d at 75.  At trial, the treating doctor testified that the cut could have caused the victim to bleed to death and caused a permanent scar.  Id.  The Supreme Court noted that "no evidence disput[ed] the Commonwealth's evidence that the injury was severe and that it resulted in permanent impairment."  Id. at 445-46, 507 S.E.2d at 76.  The Court also recognized that "to grant the defendant's requested instruction on the lesser offense, the record must contain more than a scintilla of evidence that the injury was not severe or did not result in significant and permanent impairment."  Id. at 445, 507 S.E.2d at 76.  Affirming the conviction, the Court held that "the jury's ability to reject evidence [was not] a substitute for the

evidentiary support required to grant a defendant's request for an instruction on a lesser-included offense." Id. at 446-47, 507 S.E.2d at 77.

Funkhouser argues that the evidence on the cause of death raised three possible inferences that necessitated the assault and battery instruction: Larrick started the fight and his exertion triggered the heart attack, the heart attack occurred more than twenty-four hours after the assault, or another person struck Larrick before or after Funkhouser struck him.

The medical examiner eliminated the possibility that Larrick's heart condition was fatally triggered by his own exertion and not his physical injuries. She testified that the "cause of death was blunt trauma to the head, neck, torso and extremities, and contributing to his death was coronary arterial sclerosis." On cross-examination, Funkhouser's attorney attempted to expose weaknesses in her analysis, but the medical examiner gave no indication that the heart condition was triggered by the stress of Larrick's exertions instead of his physical injuries. Indeed, no evidence in the record affirmatively supports any cause of death other than the cause opined by the medical examiner. Although the jury could have rejected the medical examiner's conclusion to reach a "not guilty" verdict, the Supreme Court has held that the jury's ability to reject the evidence does not meet the standard of evidentiary support that would require an instruction on assault and battery. See Donkor, 256 Va. at 446-47, 507 S.E.2d at 77.

The evidence proved that Larrick did not die immediately after the assault and may have lived for up to a day after he received the injuries. However, the only evidence proposing a theory about the cause of death was that of the medical examiner's opinion that Larrick died from the combination of his heart disease and the physical trauma to his body.

As for the third possibility mentioned by Funkhouser, that another person caused the fatal injuries before or after Funkhouser struck Larrick, no evidence indicated a third party was directly or indirectly involved with the death. Although a broken table leg in the bedroom had an

- 6 -

unidentified partial latent print, the forensic analyst only testified that she did not identify it as Funkhouser's print. She testified that she did not receive samples of Larrick's prints; therefore, she was unable to eliminate the prints as belonging to Larrick. She also testified the print could have come from a foot or toe. In view of these circumstances, an unidentified partial print on a broken-off table leg in Larrick's bedroom is not "more than a scintilla of evidence" that another person battered Larrick before or after Funkhouser assaulted Larrick *and* that the other battery was the one that caused the death. See Donkor, 256 Va. at 445, 507 S.E.2d at 76.

Funkhouser's argument fails to raise any possible inferences that the jury could draw from "independent evidence" that would support a conviction of assault and battery. See Guss, 217 Va. at 14, 225 S.E.2d at 197. Although he contends that the jury could have reached an assault and battery conviction by partially rejecting the Commonwealth's evidence, the holding in Donkor rejects that analysis as a basis for an adequate evidentiary support to require an instruction on a lesser-included offense. 256 Va. at 446-47, 507 S.E.2d at 77. Thus, the trial judge's decision to refuse to give the assault and battery instruction does not warrant reversing the conviction.[1]

### III.

For these reasons, we hold that the trial judge did not err in refusing the assault and battery instruction. Therefore, we affirm the conviction.

Affirmed.

---

[1] Although not addressed by the trial judge, we further note that Funkhouser testified at trial that he did not strike Larrick. Thus, his defense was that he was neither involved in an altercation with Larrick nor involved in his death. This defense supported a finding of Funkhouser's innocence and did not raise the issue of assault and battery. See Bennett v. Commonwealth, 236 Va. 448, 470-71, 374 S.E.2d 303, 317 (1988) (holding that the defendant was not entitled to an instruction on the grade of homicide where his only defense at trial was that he was not the killer).