PRESENT:  All the Justices

SAEED SHEIKH

v.  Record No. 020677    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                      November 1, 2002
BUCKINGHAM CORRECTIONAL
CENTER, ET AL.

                 FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Michael P. McWeeny, Judge


     In this appeal, we consider whether the trial court erred

in dismissing a petition for a writ of habeas corpus in which a

petitioner alleged that he was denied effective assistance of

counsel during the jury sentencing phase of his trial.

     The petitioner, Saeed A. Sheikh, was indicted for assault

by mob, in violation of Code §§ 18.2-38 and -41.  Sheikh was

accused of being a member of a gang that shot and killed a high

school student, David Albrecht, with the intent to maim,

disable, disfigure, or kill him.  Sheikh was convicted of the

charged offense in a jury trial in the Circuit Court of Fairfax

County.  The jury fixed Sheikh's punishment at a term of 17

years' imprisonment and a $10,000 fine, and the trial court

sentenced Sheikh in accordance with the jury verdict.

     After exhausting his remedies on direct appeal, Sheikh

filed a petition for a writ of habeas corpus in the trial court.

Sheikh principally asserted, in relevant part, that he was

prejudiced by his trial counsel's failure during the sentencing

proceeding to present mitigating evidence and to make an effective closing argument.

The Commonwealth filed a motion to dismiss Sheikh's petition on various grounds, including an argument that Sheikh failed to sustain his burden under Strickland v. Washington, 466 U.S. 668 (1984), of establishing that trial counsel's performance was deficient and that Sheikh suffered prejudice as a result of his counsel's performance.  Based upon a review of the trial record, the pleadings on habeas corpus, and an affidavit submitted by Sheikh's father stating that he and other family members had been available to testify at the sentencing proceeding, the trial court dismissed Sheikh's petition with prejudice.  Sheikh appeals.

We first review the evidence presented at Sheikh's criminal trial.  That evidence established that Sheikh was a leader in a gang called "TRG."  On February 26, 1998, two members of the gang were involved in a violent altercation at a convenience store.  One member of TRG, Cham Choup, sustained extensive injuries to his face.

The next morning, Sheikh, Michael Choup, who was Cham Choup's brother, and several other gang members planned to assault John C. Metcalf, one of the men who injured Cham.  The gang members waited in vehicles outside Pimmit Hills High School

for Metcalf to leave. Some of the members were armed with baseball bats and large sticks.

At 12:15 p.m., Metcalf left the school with Albrecht, who had not been involved in the previous day's fight. Metcalf and Albrecht observed the waiting vehicles and left the school parking lot in Albrecht's car, followed by the gang members in their two vehicles. Sheikh was seated in the back seat of one car behind the car's driver. Michael Choup was seated in the front passenger's seat of the same vehicle.

Albrecht drove his car to a nearby school so that Metcalf could run into the school to escape from the gang members. Before Metcalf could get out of the car, the vehicle carrying Michael Choup "pulled up" along the passenger's side of Albrecht's vehicle. Michael Choup leaned across the driver's seat of the vehicle in which he was riding and fired three shots from a "sawed off" pump rifle into Albrecht's car. Although all three shots missed Metcalf, a bullet struck Albrecht in the head, killing him.

In March 1998, after learning that Michael Choup had implicated Sheikh in a statement made to the police, Sheikh discussed his involvement in the Albrecht killing with Detective Robert J. Murphy of the Fairfax County Police Department. Sheikh admitted that he was one of the gang's leaders, and that

3

he and other gang members intended to assault and batter Metcalf to avenge Cham Choup's beating.

Sheikh stated that he had been sick on the morning of the assault. He maintained that he was unaware that Michael Choup had a gun, and that he did not know that Michael planned to shoot Metcalf. Sheikh asserted that if he had known Michael had a gun, he would not have accompanied Michael to assault Metcalf. However, Sheikh admitted that Michael had said some things before the shooting that made him think that Michael may have had a gun.

Although Sheikh recognized that Michael Choup's actions were "wrong and stupid," he stated that he did not blame Michael for his conduct. Sheikh further stated, in relevant part:

> If I saw my brother like that, I'd probably do the
> same [thing]. I'd go crazy. I wouldn't [care] if it
> was daylight out. Get a [gun] or whatever, I'd go out
> and kill 'em. I mean I'd wear a mask . . . . I'd go
> out in daylight. I mean I'd try to do it at night.
> But if I caught 'em [outside] in the day, hell, yeah,
> I'd shoot that [motherf_cker]. I'd back my brother
> with my life.

Detective Murphy read Sheikh's entire statement to the jury. On cross-examination, trial counsel established that Sheikh had been cooperative with Detective Murphy, and that Murphy's investigation did not reveal any indication Sheikh had handled the gun used to shoot Albrecht or that Sheikh had given "any directives of who to shoot."

4

At the conclusion of the Commonwealth's case, Sheikh's counsel moved to strike the prosecution's evidence on the ground that any "mob" that Sheikh may have belonged to did not share Michael Choup's intent to shoot and kill Metcalf. The trial court denied the motion.

Sheikh was the only witness to testify on behalf of the defense. He stated that he would not have gone with the other gang members if he had been aware of Michael Choup's intent. Sheikh also testified concerning his personal and family circumstances at the time of the offense. He related that he was sick on the date of the offense, that his mother was ill with cancer, and that he worked on a construction project to help pay his family's expenses. At the conclusion of all the evidence, Sheikh's counsel renewed his motion to strike, which the trial court again denied.

During closing arguments in the guilt phase, Sheikh's counsel reiterated his argument that Michael Choup was not a member of any "mob" that may have included Sheikh, because Michael's intent to kill Metcalf was not shared by the other "mob" members. Counsel also reminded the jury that after the shooting, Sheikh had stopped Michael from getting out of the vehicle to continue his attack on Metcalf.

After the jury returned its verdict finding Sheikh guilty of the offense charged in the indictment, the trial court began

5

the penalty phase of the trial.  Neither party presented an opening statement.

The Commonwealth presented evidence that Sheikh had prior convictions for felonious defacement and damage to private property, unlawful entry of a building, and assault and battery. The defense did not present any evidence.

In his closing statement to the jury, the prosecutor made brief remarks emphasizing that the gang members "took the life of an innocent young man" who had not participated "in the quarrels that the gang was worried about."  The prosecutor asked the jury to fix Sheikh's punishment at "the high end" of the sentencing range because of the magnitude of the crime and Sheikh's "background as a criminal."

In response, Sheikh's counsel made the following argument to the jury:

> Ladies and gentlemen of the jury, I thank you for the efforts that you have put in today.
>
> You've heard my arguments before.  I'm not going to repeat them again.  You know what the involvement was here and I respect your decisions.
>
> I understand the prosecution's position as far as his asking for the high end.  You've heard the evidence.  You've heard my argument previously.
>
> Obviously, you know I would ask for the lower end.  We do not minimize what has happened, but we're trying to somehow figure out what the future's going to hold.  Please search your hearts.  Thank you.

In a later sentencing hearing before the trial court, Sheikh's counsel moved the court to set aside the verdict on various grounds, including the argument that Sheikh had not shared Michael Choup's intent to kill Metcalf.  The trial court denied the motion.

Sheikh argues on appeal that he was denied his Sixth Amendment right to effective assistance of counsel.  He contends that his trial counsel's performance during the sentencing phase of the trial should be assessed under the standard set forth in United States v. Cronic, 466 U.S. 648 (1984), because there was a total collapse of the adversarial process during that proceeding.  In support of this conclusion, Sheikh emphasizes trial counsel's failure to introduce any evidence concerning his character or the mitigating circumstances of the crime, or to provide any argument supporting a lesser sentence by the jury. We disagree with Sheikh's arguments.

A defendant's right to counsel under the Sixth Amendment includes the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. at 685-86.  Under this constitutional guarantee, a defendant is entitled to counsel who is reasonably competent and who provides advice that is within the range of competence required of attorneys in criminal cases. Id. at 687.

The issue whether a defendant received effective assistance of counsel at trial presents a mixed question of law and fact that is reviewed de novo on appeal.  Id. at 698.  To prevail on a claim of ineffective assistance of counsel, a petitioner ordinarily must satisfy both parts of the two-part test set forth in Strickland.

First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Id. at 688.  In making this determination, the court considering the habeas corpus petition "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

Second, if counsel's performance is found to have been deficient, the petitioner also must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

In United States v. Cronic, the Supreme Court recognized three very limited circumstances in which the Strickland test will not be applied and prejudice will be presumed from counsel's performance.  The first such situation arises when a defendant is denied counsel at a critical stage of a criminal proceeding.  Cronic, 466 U.S. at 659.  The second circumstance

8

is when a defendant is represented by counsel at trial, but counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. Under the third exception, prejudice will be presumed when circumstances surrounding a trial prevent counsel from providing effective assistance to a defendant. Id. at 659-60.

Sheikh relies on the second exception recognized in Cronic, and argues that he thereby is relieved of establishing prejudice under the Strickland test. We observe, however, that the United States Supreme Court recently stressed the limited scope of this second exception in Bell v. Cone, ___ U.S. ___, 122 S.Ct. 1843 (2002). There, the Court emphasized its language in Cronic that a presumption of prejudice will arise under this second exception only when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. at ___, 122 S.Ct. at 1851 (quoting Cronic, 466 U.S. at 659).

In Bell, the petitioner, who had been convicted of capital murder, complained that his trial counsel rendered ineffective assistance by failing to produce mitigating evidence at the sentencing proceeding, and by waiving a closing argument at that proceeding. Id. at ___, 122 S.Ct at 1851. In rejecting the petitioner's claim, the Court observed that counsel's alleged errors "are plainly of the same ilk as other specific attorney

9

errors we have held subject to Strickland's performance and prejudice components." Id. at ___, 122 S.Ct. at 1851-52.

Sheikh's claims similarly target his counsel's failure during the sentencing proceeding to present mitigation evidence and to make an effective closing argument to the jury.[1] Guided by the Supreme Court's analysis in Bell, we find no merit in Sheikh's assertion that his ineffective assistance claim falls within the second exception stated in Cronic. Sheikh's counsel rendered assistance to his client at the sentencing proceeding by asking the jury to sentence Sheikh at the "lower end" of the sentencing range, and by reminding the jury that he already had presented evidence and argument on behalf of his client. In that earlier evidence and argument, counsel emphasized repeatedly that Sheikh did not share Michael Choup's intent to kill Metcalf. Counsel also brought to the jury's attention Sheikh's illness on the date of the offense, the fact that his mother had cancer, and the poor state of his family's financial circumstances.

Based on these facts, we hold that counsel did not entirely fail during the sentencing proceeding to subject the prosecutor's case to meaningful adversarial testing. See Bell,

---

[1] We do not consider Sheikh's claim on appeal that his counsel's performance also was deficient as a result of counsel's waiver of opening statement at the sentencing

10

___ U.S. at ___, 122 S.Ct. at 1851-52; Cronic, 466 U.S. at 659. Thus, Sheikh's claim fails under Cronic and we will consider the claim further under the standard set forth in Strickland.  In accordance with that standard, we will assess "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.

At the sentencing proceeding, Sheikh's counsel pursued a strategy that conceded the seriousness of the offense and the Commonwealth's interest in obtaining a significant sentence, while minimizing the prosecutor's ability to put evidence before the jury.  Under Code § 19.2-295.1, Sheikh's counsel's decision not to present evidence during the sentencing phase precluded the prosecutor from introducing any evidence other than a record of Sheikh's prior offenses.  See also Rule 3A:17.1(e).  Thus, by adopting this strategy, Sheikh's counsel was able to remind the jury of the evidence and argument he recently presented in the guilt phase of the trial, while shielding Sheikh from further cross-examination and preventing the prosecution from presenting any rebuttal evidence.

We also note the temporal context in which Sheikh's counsel implemented these tactical decisions.  The sentencing phase of

proceeding, because Sheikh did not assert this claim in his petition filed in the trial court.

11

the trial took place only one hour after the conclusion of the guilt phase evidence and argument, and the prosecutor had elected to waive an opening statement in the sentencing proceeding. Therefore, the evidence and argument that had been presented to the jury in the guilt phase was still fresh in the jurors' minds. We also observe that the substantive content of the evidence Sheikh claims should have been presented during the sentencing phase, summarized in the affidavit of Sheikh's father, was not materially different from the evidence of Sheikh's family life and work experience presented to the jury in the guilt phase of the trial.[2] Therefore, we hold that trial counsel's strategy, viewed as of the time of its implementation, did not fall below "an objective standard of reasonableness." Strickland, 466 U.S. at 687-90.

Because Sheikh has not established that trial counsel's performance was deficient, we need not address the "prejudice" component of the Strickland test. See id. at 697; Curo v. Becker, 254 Va. 486, 493, 493 S.E.2d 368, 371 (1997). Sheikh has failed to meet his evidentiary burden under Strickland, and we conclude that he was not denied his Sixth Amendment right to effective assistance of counsel. Accordingly, we hold that the

---

[2] We do not consider the additional affidavits Sheikh submitted after the trial court entered its final order on December 18, 2001.

12

trial court did not err in dismissing with prejudice Sheikh's petition for a writ of habeas corpus.

For these reasons, we will affirm the trial court's judgment.

<u>Affirmed.</u>