PRESENT:  All the Justices

GENE M. JOHNSON, DIRECTOR OF THE
VIRGINIA DEPARTMENT OF CORRECTIONS

v.    Record No. 070531                    OPINION BY
                                  JUSTICE BARBARA MILANO KEENAN
                                        January 11, 2008
DEREK ELLIOTT TICE

            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Everett A. Martin, Jr., Judge

        In this appeal, we consider whether a circuit court erred

in awarding a writ of habeas corpus based on its holding that

a petitioner was prejudiced by his trial counsel's failure to

file a motion to suppress the petitioner's confession.  We

also address as a matter of cross-error whether the circuit

court erred in denying the petitioner's separate claim that

trial counsel were ineffective, thereby causing the petitioner

to suffer prejudice, because trial counsel failed to lay a

proper foundation for the introduction of a certain letter

into evidence at trial.

                        I. PROCEDURAL HISTORY

        In 2003, Derek Elliott Tice was convicted in a jury trial

in the Circuit Court of the City of Norfolk of the capital

murder of Michelle Moore-Bosko, in violation of Code § 18.2-

31(2), and the rape of Michelle Moore-Bosko, in violation of

Code § 18.2-61.  The circuit court sentenced Tice to two terms

of life imprisonment.[1]  The Court of Appeals denied Tice's petition for appeal.  Tice v. Commonwealth, Record No. 0408-03-1 (December 23, 2003).  This Court likewise refused Tice's petition for appeal.  Tice v. Commonwealth, Record No. 040160 (October 1, 2004).

In 2005, Tice filed a petition for a writ of habeas corpus in the Circuit Court of the City of Norfolk (the habeas court), in which he alleged claims of police and prosecutorial misconduct and claims of ineffective assistance of counsel. The habeas court dismissed most of Tice's claims by order and held an evidentiary hearing on the remaining claims.

At the evidentiary hearing, Tice alleged that his trial counsel were ineffective for failing to file a motion to suppress Tice's confession on the ground that he had invoked his right to remain silent.  Tice also alleged that his trial counsel were ineffective for failing to properly introduce into evidence a letter written by another inmate, Omar A. Ballard, who had admitted his participation in the crimes for which Tice was convicted.

---

[1] Tice's earlier convictions for these offenses were reversed on appeal by the Court of Appeals, which held that the jury had not been properly instructed.  Tice v. Commonwealth, 38 Va. App. 332, 563 S.E.2d 412 (2002).  The present opinion discusses only the evidence presented at Tice's second trial.

After the evidentiary hearing, the habeas court dismissed Tice's claim concerning Ballard's letter but held that trial counsel were ineffective in failing to move to suppress Tice's confession, because such a motion "would probably have been granted" on the ground that Tice had invoked his right to remain silent. The habeas court further held that there was a "reasonable probability the jury would have acquitted [Tice] if his confession had not been admitted into evidence." On that basis, the habeas court awarded Tice a writ of habeas corpus.

## II. TICE'S CRIMINAL TRIAL

At Tice's trial, the Commonwealth contended that Tice was one of several men who had raped and murdered Michelle Moore-Bosko (Michelle). Tice's attorneys, however, maintained that Omar A. Ballard was the sole perpetrator of the crimes committed against Michelle.

The evidence showed that on July 8, 1997, William A. Bosko returned to his apartment in Norfolk after a tour of duty with the United States Navy and found the dead body of his wife, Michelle. Michelle had died from manual strangulation and multiple stab wounds to the chest. The evidence further revealed that Michelle had suffered "forcible injuries" to her vaginal area.

City of Norfolk police officers found a blood-stained, serrated knife near Michelle's body. The police also recovered some DNA samples from Michelle's vagina and from a blanket on the bed. Robert Scanlon, a forensic scientist, testified that Tice was eliminated as the source of this DNA evidence. Scanlon's testimony further revealed a very high correlation between these DNA samples collected at the crime scene and the DNA sample obtained from Ballard.

The jury also heard the testimony of Joseph Dick, who had participated in the rapes and murder of Michelle and had entered into a plea agreement with the Commonwealth. Dick testified that at the time the crimes against Michelle were committed, he lived across the hall from Michelle's apartment with Danial Williams. Dick stated that on the night of Michelle's death, he was present at Williams' apartment with Williams and five other men, including Tice, Eric Wilson, Richard Pauley, Geoffrey Farris, and John Danser.

Dick testified that during a group conversation, he heard Williams state that he would like to see Michelle's "panties." After further discussion, the seven men knocked on Michelle's apartment door, but Michelle directed them to leave.

Dick testified that the men walked to a parking lot where Ballard, a man Dick did not know, joined the group. According to Dick, the men, including Ballard, returned to Michelle's

apartment and knocked on the door again. Michelle opened the door, and the eight men forced their way into the apartment and carried Michelle to the bedroom. Dick testified that each man assisted in restraining Michelle, and that all the men, including Tice, had forcible sexual intercourse with her.

Dick further testified that each man, including Tice, took turns stabbing Michelle with a knife obtained from her kitchen. After the men left Michelle's apartment, they "made a pact not to say anything" about the crimes and not to "turn each other in." Dick stated that he entered into this "pact" because he was afraid of Ballard.

Dick acknowledged in his testimony that he originally was charged with capital murder and that as a result of his plea agreement, he had been convicted of first-degree murder. In the plea agreement, Dick promised to cooperate in the police investigation and to testify truthfully against all others charged with the crimes.

Dick testified that he gave an initial account to the police that contained some false statements but, that after further police questioning, he admitted being present with Williams when Williams raped Michelle. In a second conversation with the police, Dick told the police that he also had raped Michelle. Dick testified that he informed the police that he, Williams, and Eric Wilson had committed the

5

crimes. Dick admitted in his testimony, however, that he had lied to the police in that second interview about other details of the crimes.

Dick further testified that in a third conversation with the police, he related that there were six men who each raped and stabbed Michelle but that he did not know all their names. Dick additionally stated that he had identified Tice as one of the perpetrators based on a photograph shown from a Navy yearbook, and that he had met Tice only once before the night of Michelle's death.

Dick admitted in his testimony that during this third police interview, he again provided inaccurate details of the crime to the police. Also, Dick admitted that he had written a letter to a member of the media in which he denied involvement in the crimes and claimed that he was pressured by the police to confess. Dick explained that he had written the letter containing those false statements in an attempt to generate media attention and to help his own case.

Detective Robert G. Ford testified that after Dick identified Tice as one of the perpetrators, the police arrested Tice in Florida. Ford stated that when Tice arrived at the police station in Norfolk, Ford advised Tice of his Miranda rights, and that Tice waived these rights and indicated that he wanted to speak with the police.

6

Ford further testified that Tice initially denied participating in the crimes but acknowledged that he knew Williams and was aware that Williams had been arrested. Ford stated that he and Detective Brian Wray continued to question Tice, who eventually began crying and relating details of the crimes. At this time, Tice stated that he, Williams, Wilson, Dick, Farris, and another man whose name Tice did not know, all participated in the crimes. Tice ultimately advised Ford that Pauley also participated in the crimes, and stated that each of the men raped Michelle and stabbed her with a knife obtained from the kitchen. Tice added that Williams desired to rape Michelle first because she was Williams' "trophy."

Ford made a tape recording of Tice's statement, and a transcript of that statement was admitted into evidence. In the recorded statement, Tice explained that before the murder, all the men agreed to participate in raping and murdering Michelle so that each would be culpable for the crimes.

Ballard was served with a subpoena to appear at Tice's trial but refused to testify. However, Detective David M. Peterson testified regarding the contents of three statements that Ballard made to the police.

Peterson testified that after he learned that Ballard's DNA sample "matched" the DNA samples found in Michelle's apartment, Peterson interviewed Ballard, who was incarcerated

7

for another crime.  Ballard claimed that he was alone with Michelle in her apartment on the night in question and that, after they engaged in consensual sexual intercourse, something in Ballard "ticked" causing him to obtain a knife from the kitchen and stab Michelle.  Ballard also told Peterson that Michelle had informed him that Williams was "stalking her."

Peterson testified that when he interviewed Ballard a second time, Ballard admitted that he had raped Michelle, and that he had choked and stabbed her.  Ballard further admitted writing a letter (the Ballard letter) to a friend stating that he had murdered Michelle.  When Tice's counsel asked that the Ballard letter be admitted into evidence, the circuit court sustained the Commonwealth's objection.

Peterson also testified that he spoke with Ballard a third time, after Ballard pleaded guilty to the rape and murder of Michelle.  At that time, Ballard admitted being present at Michelle's apartment complex on the date of her death and hearing a group of four men, including Williams, discussing an attempt to enter Michelle's apartment.  Ballard stated that he helped the men enter Michelle's apartment and that, after entering, they all raped and stabbed Michelle.

Tamika Taylor testified that Michelle was her closest friend and that on nights when Michelle's husband was away from home, Taylor and Michelle usually stayed together in

Michelle's apartment. Taylor related that Williams "constantly" knocked on Michelle's door when Michelle's husband was not at home and asked to use Michelle's telephone. Taylor stated that Williams also would often "peep" through his window in an apparent attempt to observe Michelle walking in the hallway.

Taylor testified that she spent the night at Michelle's apartment the night before Michelle's death and left about 7:00 a.m. At that time, Ballard, a friend who often visited Michelle and Taylor early in the morning, was still present in Michelle's apartment.

### III. HABEAS HEARING

At the habeas hearing, Tice presented evidence concerning his claims of ineffective assistance of counsel. Tice testified that when the police first interrogated him, prior to his confession, he told Detective Randy Crank that "[he didn't] want to talk anymore. . . but [he] might after [he] talked to a lawyer." Tice stated that the police then left him alone for a few minutes, until two detectives entered the room and accused him of committing the crimes.

Tice confirmed that he eventually confessed to the police that he had participated in the crimes. However, Tice also maintained at the habeas hearing that he was not involved in the crimes committed against Michelle. Tice further testified

9

that he did not recall discussing with his trial counsel any statement he made during the police interrogation regarding his desire to remain silent.

Detective Crank stated that during Tice's first interview with the police, Crank advised Tice of his Miranda rights and administered a polygraph test to him. Crank testified that at the conclusion of the polygraph test, Tice made a statement that Crank entered in his notes, which were admitted into evidence at the habeas hearing. Crank's notes reflected the following exchange:

> [Tice] told me [that Tice] decide[d] not to say any more; that [Tice] might decide to after he talks with a lawyer, or spends some time alone thinking about it. I told [Tice that] he would be given time to think about it. [Tice] did not request a lawyer. (Emphasis in original.)

Detective Ford testified that Crank did not inform Ford of this particular statement that Tice made. When Tice returned to the interrogation room, Ford told Tice that he had failed the polygraph test. Ford resumed the interrogation, and Tice eventually confessed his involvement in the crimes.

James O. Broccoletti, one of Tice's trial counsel, testified concerning his representation of Tice, which began more than six years before the habeas hearing. Broccoletti stated that he discussed with Tice whether Tice had invoked his Miranda rights but could not recall the details of that conversation. However, Broccoletti remembered that Tice did

10

not say that he had invoked his right to remain silent during the police interrogation.

Broccoletti acknowledged that he had received a copy of Crank's notes before Tice's trial and had reviewed every statement Tice made to the police. Broccoletti testified that Crank's notes "may have generated" a motion to suppress and that, although he could not offer an explanation, there must have been a reason that Broccoletti did not file such a motion.

Broccoletti also testified that he attempted to have the Ballard letter admitted into evidence at Tice's trial because Ballard had referenced the letter in his statement to police. Broccoletti explained that he had assumed that Detective Peterson could identify Ballard's handwriting for purposes of having the letter admitted into evidence.

Jeffrey R. Russell, also trial counsel for Tice, testified that trial counsel met with Tice many times and had several conversations with Tice on "every conceivable topic." Russell stated that he was "confident" that Tice had not informed trial counsel that he had invoked his Miranda rights during the police interrogation.

## IV. DISCUSSION

The Commonwealth argues that the habeas court erred in concluding that Tice received ineffective assistance of

11

counsel and was prejudiced by trial counsel's failure to file a motion to suppress Tice's confession. The Commonwealth contends that trial counsel reasonably could have declined to file a motion to suppress because Tice's invocation of the right to remain silent was conditional and, thus, did not constitute an unambiguous request to remain silent. The Commonwealth further argues that Tice was not prejudiced by his counsel's failure to file a motion to suppress the confession because such motion would have been denied.

In response, Tice argues that the habeas court correctly determined that his trial counsel were ineffective in failing to file a motion to suppress his confession because he unambiguously had invoked his right to remain silent. Tice also contends that the habeas court properly concluded under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), that he suffered prejudice as a result of his counsel's failure to file a suppression motion. Tice asserts that his defense was prejudiced because the jury likely accorded his confession great weight and Dick's testimony was subjected to "damaging" cross-examination by Tice's counsel.

In deciding this issue, we apply well-established principles of law. A defendant's right to counsel under the Sixth Amendment includes the right to effective assistance of counsel. Yarborough v. Gentry, 540 U.S. 1, 5 (2003); Roe v.

12

Flores-Ortega, 528 U.S. 470, 476-77 (2000); Strickland, 466 U.S. at 685-86; Lewis v. Warden, 274 Va. 93, 111, 645 S.E.2d 492, 502 (2007); West v. Director, Dep't of Corrections, 273 Va. 56, 62, 639 S.E.2d 190, 194 (2007). Under this guarantee, a defendant is entitled to counsel who is reasonably competent and who gives advice that is within the range of competence required of attorneys in criminal cases. Wiggins v. Smith, 539 U.S. 510, 521-23 (2003); Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); Strickland, 466 U.S. at 687; Lewis, 274 Va. at 111-12, 645 S.E.2d at 502-03; West, 273 Va. at 62, 639 S.E.2d at 194.

The issue whether trial counsel provided effective assistance presents a mixed question of law and fact. Strickland, 466 U.S. at 698; Lewis, 274 Va. at 112, 645 S.E.2d at 503; Yarbrough v. Warden, 269 Va. 184, 195-96, 609 S.E.2d 30, 36 (2005). A circuit court's findings of fact and conclusions of law "are not binding upon this Court, but are subject to review to determine whether the circuit court correctly applied the law to the facts." Curo v. Becker, 254 Va. 486, 489, 493 S.E.2d 368, 369 (1997); see also Green v. Warden, 264 Va. 604, 608-09, 571 S.E.2d 135, 138 (2002).

To prevail on a claim of ineffective assistance of counsel, a petitioner must ordinarily satisfy both parts of the two-part test set forth in Strickland. Wiggins, 539 U.S.

13

at 521; Williams v. Taylor, 529 U.S. 362, 390 (2000); Strickland, 466 U.S. at 687; Lewis, 274 Va. at 112, 645 S.E.2d at 503; West, 273 Va. at 62, 639 S.E.2d at 194. The petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88; accord Wiggins, 539 U.S. at 521; Williams, 529 U.S. at 390-91; Lewis, 274 Va. at 112, 645 S.E.2d at 503; West, 273 Va. at 62, 639 S.E.2d at 194. In making this determination, the court considering the habeas corpus petition "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; accord Kimmelman, 477 U.S. at 381; Darden v. Wainwright, 477 U.S. 168, 185-86 (1986); Lewis, 274 Va. at 112, 645 S.E.2d at 503; West, 273 Va. at 62, 639 S.E.2d at 194; Yarbrough, 269 Va. at 196, 609 S.E.2d at 37.

If counsel's performance is found to have been deficient under the first part of the Strickland test, to obtain relief the petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Wiggins, 539 U.S. at 534; Williams, 529 U.S. at

14

390-91; <u>Lewis</u>, 274 Va. at 113, 645 S.E.2d at 503-04; <u>Yarbrough</u>, 269 Va. at 197, 609 S.E.2d at 37-38; <u>Lovitt v. Warden</u>, 266 Va. 216, 250, 585 S.E.2d 801, 821 (2003).

When, as in the present case, the principal allegation of ineffectiveness is trial counsel's failure to litigate competently a constitutional claim, a habeas petitioner first must prove that the constitutional claim is meritorious. <u>See Kimmelman</u>, 477 U.S. at 375. The habeas petitioner secondly must establish that there is a reasonable probability that the verdict would have been different had the fact finder not considered the excludable evidence. <u>Id.</u>; <u>see</u> <u>Strickland</u>, 466 U.S. at 694.

A reviewing court, however, is not required to determine whether "counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697; <u>see</u> <u>also</u> <u>Lewis</u>, 274 Va. at 113, 645 S.E.2d at 504; <u>Yarbrough</u>, 269 Va. at 197, 609 S.E.2d at 38; <u>Lovitt</u>, 266 Va. at 250, 585 S.E.2d at 821.

In addressing Tice's claim, as directed by the Supreme Court in <u>Strickland</u>, we move directly to consider the second

15

prong of the Strickland test, namely, the issue whether Tice suffered prejudice sufficient to undermine confidence in the outcome of the proceedings as a result of the admission of his confession at trial. We resolve this issue by reviewing the remaining trial evidence, in the absence of Tice's confession, under the Strickland standard.

Upon this review, we note that Dick admitted at trial that he had not told the truth to the police regarding several details of the crimes. Those details included the room in which the crimes occurred, the question whether Michelle performed oral sodomy on Tice and Williams, and the issue whether Michelle had gained control of the knife and threatened Williams. However, despite these and other inaccuracies in his earlier statements to the police, Dick was consistent in his sworn testimony implicating himself and Tice in the rapes and murder of Michelle, and did not change or retract any aspect of that testimony on cross-examination by Tice's trial counsel.

We also observe that Tice's counsel failed to present any evidence showing that Dick had a motive to fabricate his testimony concerning Tice's role in the crimes. When Dick gave his testimony at Tice's trial, Dick was serving two sentences of life imprisonment for his crimes against Michelle

16

and was not subject to any additional penalties for those crimes.

Dick's testimony further revealed that he had seen Tice on only one occasion prior to Michelle's murder, and had identified Tice from a photograph that appeared among many other photographs in a Navy yearbook. This evidence established that Dick and Tice did not have a prior relationship that could support a charge that Dick disliked Tice or was otherwise biased against him. Thus, this evidence additionally supported the credibility of Dick's testimony about Tice's participation in the crimes.

Tice's defense at trial was based on the theory that Ballard alone committed the offenses against Michelle. Tamika Taylor's testimony undermined this theory. Her testimony revealed that Williams had an apparent obsession with Michelle, providing a link to the crimes perpetrated by the group that included Williams, Tice, and Dick. This testimony also was consistent with Dick's testimony that Williams wanted to "go over and see Michelle's panties."

Taylor's testimony also established that Ballard and Michelle were friends, and that Ballard frequently visited Michelle in her apartment. This testimony helped explain Ballard's statement to Detective Peterson that Michelle opened

17

her apartment door to the group that included Ballard, when she earlier had refused entry to the original group.

In addition to the above testimony, the jury also received evidence concerning DNA samples recovered from Michelle's body and from a blanket found on the bed at the crime scene. Forensic scientists Robert Scanlon and Jerry Sellers both testified that intercourse can occur during a rape without DNA material being deposited in a victim's vagina, provided that the perpetrator did not ejaculate. Scanlon further explained a perpetrator would not usually leave epithelial cells containing DNA as a result of sexual intercourse and stated that, thus, "if there is no ejaculation, typically I don't expect to detect anything." This expert testimony, therefore, provided an explanation with regard to how several men could have raped Michelle with only one man, Ballard, having deposited bodily fluids from which DNA samples could be extracted.

We also observe that Tice presented evidence showing that John Danser and Richard Pauley, who were part of the group that Dick implicated in committing these crimes, had produced alibi evidence concerning their activities on the night Michelle was murdered. This evidence, however, did not relate to Tice's activities on the date of the offense and,

18

therefore, was of questionable relevance to the issue whether Tice participated in committing the crimes against Michelle.

With these considerations in mind, and having reviewed all the evidence presented at Tice's criminal trial with the exception of his confession, we conclude that the circuit court erred in holding that Tice satisfied his evidentiary burden under Strickland.  We hold, as a matter of law, that Tice failed to meet his burden of proving the prejudice prong of Strickland, namely, that there was a reasonable probability of a different result at his criminal trial if the jury had not considered his confession.  See 466 U.S. at 694; see also Lewis, 274 Va. at 117, 645 S.E.2d at 506; Lovitt, 266 Va. at 257, 585 S.E.2d at 825-26.  In short, the record before us does not undermine confidence in the outcome of the proceedings.  See Strickland, 466 U.S. at 694; Wiggins, 539 U.S. at 534; Lovitt, 266 Va. at 257, 585 S.E.2d at 826.

Our conclusion that the circuit court erred in awarding Tice a writ of habeas corpus is not altered upon our consideration of Tice's assignment of cross-error.  In this assignment, Tice contends that he suffered prejudice resulting from his trial counsel's failure to have the Ballard letter admitted into evidence.

The Ballard letter contained the following statement: "Remember that night [I] went to Mommie's house and the next

morning Michelle got killed guess who did that, <u>Me</u> HA, HA."
(Emphasis in original.)  Although this representation
constituted an admission by Ballard that he murdered Michelle,
that writing notably is silent regarding the question whether
Ballard acted alone in killing Michelle.

Again, as directed by <u>Strickland</u>, we directly consider
the question whether the exclusion of the Ballard letter from
evidence prejudiced Tice's defense.  We conclude that
Ballard's admission in the letter that he murdered Michelle
would have been merely cumulative of other evidence of
Ballard's commission of the crimes.  Although Ballard refused
to testify at Tice's trial, Ballard's statements to Detective
Peterson that were admitted into evidence contained an
admission that Ballard wrote a letter to a friend stating that
he had killed Michelle.  In addition, the jury heard testimony
from Detective Peterson that Ballard made three other
admissions that he had murdered Michelle, and also admitted
twice that he had raped her.  Therefore, we hold that the
exclusion of this cumulative evidence did not constitute
prejudice under the <u>Strickland</u> standard.  <u>See</u> <u>Snow v. Sirmons</u>,
474 F.3d 693, 729 (10th Cir. 2007); <u>Huffington v. Nuth</u>, 140
F.3d 572, 581 (4th Cir. 1998); <u>Hunt v. Nuth</u>, 57 F.3d 1327,
1333 (4th Cir. 1995).  Accordingly, the circuit court did not

err in holding that Tice failed to establish prejudice regarding this allegation in his petition.

For these reasons, we will affirm the circuit court's determination that the exclusion of the Ballard letter did not prejudice Tice, we will reverse the circuit court's award of a writ of habeas corpus on the claim that Tice's counsel were ineffective in failing to move to suppress his confession, thereby prejudicing Tice, and we will enter final judgment dismissing Tice's petition.[2]

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>petition dismissed.</u>

---

[2] Based on our holding, we do not address the Commonwealth's additional assignment of error that the habeas court applied an incorrect legal standard in considering the issue whether trial counsel's failure to file a suppression motion constituted ineffective assistance of counsel.