Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Agee,[1] JJ., and Russell, S.J.

AHMER SHAIKH                              OPINION BY
                                 SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 072097                  September 12, 2008

GENE M. JOHNSON, DIRECTOR,
DEPARTMENT OF CORRECTIONS

               FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        David T. Stitt, Judge

     This appeal from an order dismissing a petition for a

writ of habeas corpus presents two issues questioning whether

the petitioner was denied his right to the effective

assistance of counsel.  First, the petitioner contends that

his trial counsel failed in his duty to make a draft jury

instruction, rejected by the trial court, a part of the record

for the purpose of appeal.  Petitioner's second contention is

that his counsel at trial rendered ineffective assistance by

failing to call as a witness a co-defendant who was the

immediate perpetrator of the crime for which the petitioner

was on trial.  He further argues that the habeas court erred

in denying him an evidentiary hearing.  For the reasons stated

below, we find no reversible error in the trial court's

judgment.

_____

     [1] Justice Agee participated in the hearing and decision of
this case prior to his retirement from the Court on June 30,
2008.

Applying familiar principles of appellate review, we will state the facts leading to the petitioner's conviction in the light most favorable to the Commonwealth, the prevailing party in the underlying criminal case. The essential facts relating to the habeas corpus proceeding are undisputed.

Ahmer Shaikh (Ahmer), the petitioner, lived in an apartment in Fairfax County with his father, Altaf Shaikh, his sister, Humaira, his younger brother, Furqan Altaf, and Humaira's husband, Faisal Rehman, as well as two younger sisters. Humaira had been having an adulterous affair with another man, Zahid Ali (Zahid). The affair eventually became known to the family, all of whom expressed their angry disapproval. On September 9, 2002, Zahid went to the family's apartment to discuss the situation with Humaira's father. A commotion ensued. Ahmer was not present, but his younger brother called him on his cellular telephone and he arrived soon thereafter. Family members had to restrain Ahmer from attacking Zahid. Rehman then came into the room with a kitchen knife and stabbed Zahid repeatedly. Ahmer broke free from his relatives and joined in the attack, hitting Zahid on the head with a stick. Humaira tried to cover Zahid's head wounds with a scarf as Ahmer and Rehman continued to attack him. Zahid dove off a second-story balcony to escape his

attackers, falling to a concrete patio below.  Ahmer picked up the knife, threw it into a pot of water, and called 911, giving a false report that an unknown intruder "came to my house [t]o attack us . . . with a knife."  Zahid died later that night of multiple stab wounds to the head, neck and upper body.

Ahmer and Rehman were each indicted for the murder of Zahid.  In separate jury trials, each was convicted of second-degree murder.  Rehman was tried first, and at the time of Ahmer's trial had been convicted but was awaiting sentencing.  Ahmer's counsel interviewed Rehman and discussed the case with his counsel before Ahmer's trial, but decided not to call Rehman as a witness.

At Ahmer's trial, the court asked counsel whether they had agreed on a final set of jury instructions.  Counsel informed the court that they were in agreement as to all but one instruction, that which related to "concert of action."  The Commonwealth proposed an instruction in the form set forth in 1 Virginia Model Jury Instructions - Criminal No. 3.160, at 3-11 (repl. ed. 2007):

> The court instructs the jury that if there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every

other person connected with the consummation of such resulting crime.

Defense counsel stated that the model instruction was accurate but incomplete because it lacked language defining "concert of action." The defense proposed "Instruction R," which is not contained in the record. The only indication of its content is contained in counsel's oral argument, apparently quoting the initial phrase of the proposed instruction: "Concert of action is an action that's been planned, arranged, adjusted, agreed on or settled between the parties acting together, et cetera."[2] The Commonwealth objected that if such definitional language were to be added, additional language would also be necessary.

The court refused Instruction R, observing that the appellate courts had frequently "cautioned against pulling language out of particular cases" in framing jury instructions. The court indicated, however, that if counsel could agree on an amended version, it would be considered. Counsel were unable to agree on language and the court granted the model instruction quoted above as Instruction No. 8. The court stated that refused Instruction R was a part of the record but, for reasons unknown, that instruction was omitted

---

[2] Ahmer points out on brief that this language was taken from the opinion of the Court of Appeals in Berkeley v. Commonwealth, 19 Va. App. 279, 283, 451 S.E.2d 41, 43 (1994).

4

from the record and has never appeared in subsequent proceedings.

One of the agreed instructions given to the jury was:

INSTRUCTION NO. 9

A principal in the first degree is the person who actually commits the crime. A principal in the second degree is a person who is present, aiding and abetting, by helping in some way in the commission of the crime. Presence and consent alone are not sufficient to constitute aiding and abetting. It must be shown that the Defendant intended his words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it.

A principal in the second degree is liable for the same punishment as the person who actually committed the crime.

After the jury had retired to consider its verdict, the jury sent the following written question to the court:

In considering instruction #8, does the jury make a decision with regard to it using the criteria in instruction #9 for a principle [sic] in the second degree? Especially the sentence: "It must be shown that the defendant intended his words, questions, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it."

At the suggestion of Ahmer's counsel, the court advised the jury to follow the instructions as written.

The Court of Appeals granted Ahmer an appeal. After briefing and oral argument, a divided panel affirmed the judgment of the trial court by an unpublished memorandum opinion. Shaikh v. Commonwealth, Record No. 2614-03-4 (Jan.

5

25, 2005). The majority opinion did not address the merits of Shaikh's claim regarding the refusal of Instruction R because it was not a part of the record on appeal. The majority opinion held, however, that the trial court had not "left a vital issue unaddressed by using the model concert of action instruction." Id., slip op. at 9. The Court of Appeals thereafter denied Ahmer's petition for a rehearing en banc, noting that an insufficient number of judges had voted to grant it. Shaikh v. Commonwealth, Record No. 2614-03-4 (Mar. 7, 2005). This Court subsequently refused Ahmer's petition for appeal.

Ahmer filed the present petition for habeas corpus in the circuit court, raising two claims of ineffective assistance of counsel: (1) counsel's failure to ensure that Instruction R was made a part of the record,[3] and (2) counsel's failure to call Rehman as a defense witness at Ahmer's trial. Ahmer also requested an evidentiary hearing "to resolve the factual disputes and to provide [him] the opportunity to prove [his] grounds for habeas relief."

---

[3] The record shows that Dale M. Race, Esq., served as trial counsel for Ahmer. After Ahmer was sentenced on September 16, 2003, Mr. Race informed the trial court that he would not represent Ahmer in any post-trial matters. A final order was entered on September 16, 2003. On October 23, 2003, the court appointed Crystal Meleen, Esq. as appellate counsel. James G. Connell, III, Esq. entered the case as Ahmer's retained counsel on December 8, 2003.

6

The Attorney General, for the respondent, filed a motion to dismiss the petition. The circuit court[4] denied the request for an evidentiary hearing and, on the arguments of counsel, briefs, exhibits and record of Ahmer's trial and appellate proceedings, granted the motion to dismiss. We awarded Ahmer an appeal.

## Analysis

### A. Standard of Review

A criminal defendant's Sixth Amendment right to the assistance of counsel in his defense entitles him to "reasonably competent counsel who provides assistance that is within the range of competence required of attorneys in criminal cases." West v. Director, Dep't of Corrs., 273 Va. 56, 62, 639 S.E.2d 190, 194 (2007) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The issue whether a defendant was deprived of his Sixth Amendment right to effective assistance presents a mixed question of law and fact that is reviewed de novo on appeal. Strickland, 466 U.S. at 698.

Strickland prescribes a two-pronged test that a habeas petitioner must satisfy in order to prevail in a claim of

---

[4] Judge David T. Stitt, who had presided at the trial of the criminal case, also heard and decided the habeas proceeding.

ineffective assistance of counsel, the "deficient performance" prong and the "prejudice" prong. To satisfy the first of these, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The court reviewing the habeas petition "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The second prong of the Strickland test requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. It is not necessary for a court deciding an ineffective assistance claim to address both components of the inquiry, or to address them in any particular order. If the petitioner makes an insufficient showing on either component of the test, the other need not be considered. Id. at 697; Johnson v. Tice, 275 Va. 18, 28, 654 S.E.2d 917, 924 (2008); see also Sheikh v. Buckingham Correctional Center, 264 Va. 558, 566-67, 570 S.E.2d 785, 790 (2002) (unnecessary to address prejudice prong because petitioner failed to establish deficient performance); Curo v. Becker, 254 Va. 486, 493, 493 S.E.2d 368, 371 (1997) (same).

## B.  Instruction R

In ruling on the respondent's motion to dismiss Ahmer's habeas petition, the circuit court held that trial counsel was entitled to rely on the court's statement at trial that Instruction R was a part of the record, and that the petitioner had not established deficient performance on counsel's part that would satisfy the first part of the Strickland test.

Ahmer cites Woods v. R. D. Hunt & Son, Inc., 207 Va. 281, 287, 148 S.E.2d 779, 783 (1966), for the proposition that "the onus is upon the appellant to provide [the appellate court] with a sufficient record from which [it] can decide whether the trial court erred as alleged.  A failure to furnish a sufficient record will result in an affirmance of the judgment appealed from."  Thus, Ahmer contends, it was the duty of his counsel to take such steps as might be necessary to ensure that the record was complete in order to protect his appellate rights.[5]

The question whether counsel's performance fell below the standard with respect to Instruction R is subject to the

---

[5] We held, in Miles v. Sheriff, 266 Va. 110, 115-16, 581 S.E.2d 191, 194 (2003), that counsel's performance was deficient under the first prong of Strickland by failing to comply with a specific instruction from his client to appeal a criminal conviction.

9

subsidiary question whether, as the circuit court found, counsel was entitled to rely on the court's statement at trial that Instruction R was a part of the record. The question is further complicated by the rapid succession of three attorneys who assumed responsibility for the defense during the crucial period between sentencing and appeal, when the record was being assembled in the clerk's office.

Ahmer's arguments are correct as abstract statements of the law. Applying them to the peculiar circumstances of this case, however, brings us to consideration of the Supreme Court's observation in Strickland:

> The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

466 U.S. at 697.

That admonition is particularly appropriate to the present case. However complex the question of counsel's performance may have been in the circumstances, Ahmer's failure to establish the prejudice prong of the Strickland test is clear. The jury was fully and fairly instructed. All instructions except that relating to "concert of action" were agreed upon by the parties. We agree with the majority

10

opinion of the Court of Appeals in its holding that the trial court's use of the model jury instruction had left no vital issue unaddressed.

Ahmer argues that the essential content of Instruction R can be determined from its apparent quotation by counsel in oral argument. Assuming that to be true, we think its language would have been more confusing than enlightening. The terms "planned, arranged, adjusted, agreed on or settled" are stated in the disjunctive, so as to give the jury the apparent choice of any single one of them as the definition of "concert of action." In that context, "adjusted" and "settled" are themselves in need of definition. There is no limitation of the time within which these actions must have occurred in order to be significant. Ahmer asserts that the terms he advocates were taken from the explanatory language contained in an appellate decision. We have frequently cautioned against "the danger of the indiscriminate use of language from appellate opinions in a jury instruction." Clohessy v. Weiler, 250 Va. 249, 255, 462 S.E.2d 94, 98 (1995) (quoting Blondel v. Hayes, 241 Va. 467, 474, 403 S.E.2d 340, 344 (1991)). Appellate language used to explain a ruling or illustrate a point must necessarily be tailored to the facts and circumstances of the case then before the court on appeal. Unless clearly intended for use as a jury instruction, such

language is inappropriate for that purpose. See National Union Fire Ins. Co. v. Bruce, 208 Va. 595, 601, 159 S.E.2d 815, 820 (1968).

The burden is on the proponent of a jury instruction to satisfy the trial court that the proposed language is a correct statement of the law, applicable to the facts of the case on trial, and expressed in appropriate language. If Instruction R was phrased as Ahmer contends, his trial counsel could not have met that burden. Consequently, the trial court did not err in refusing the proposed instruction and its refusal would have been unavailing as a ground for reversal even if it had been contained in the record on appeal.

Accordingly, we conclude that Ahmer suffered no prejudice because of the omission of Instruction R from the record and we do not reach the "performance" prong of Strickland in deciding Ahmer's assignments of error concerning Instruction R.

### C. Rehman as a Witness.

All but one of the eyewitnesses to the events of September 9, 2002 were members of Ahmer's family. They gave wildly varying accounts of those events in their initial statements to the police, in subsequent interviews with the police, in recorded statements, as witnesses in the separate trials of Rehman and Ahmer, and in the sentencing proceedings

12

thereafter.  Because of these discrepancies, most were impeached by their prior inconsistent statements.

Rehman was no exception.  He initially told the police, on the night of the murder, that when he entered the apartment, he found Ahmer engaged in a fight with Zahid, the victim, and that he tried to intervene by grabbing the victim's hand and trying to pull him off Ahmer, after which the victim pulled away and jumped off the balcony to escape. Later that night, Rehman changed his story and told the police that he was angry about the affair between Zahid and Humaira, that he entered the apartment, found Zahid in conversation with Humaira's father and struck Zahid with his fist.  Rehman further stated that Ahmer joined in the fight and both of them started punching Zahid, after which Rehman went to the kitchen, picked up a knife, returned, and stabbed Zahid several times.  At the guilt phase of Rehman's trial, he testified that after he stabbed Zahid, someone else pulled him away and he saw the door open, whereupon Ahmer came in and started hitting Zahid after Rehman had finished.  At the penalty phase of Rehman's trial, he testified that the fight was entirely between himself and Zahid, and that Ahmer "just try to stop us."  By the time of Rehman's sentencing hearing, however, Ahmer had been tried and convicted.  At that point, Rehman's counsel argued to the court, "Ahmer Shaikh was the

13

leader of this family[.]  Ahmer Shaikh was the one that wanted something to happen to [Zahid]. . . .  Your Honor, the jury in [Ahmer's] case . . . recognized Ahmer Shaikh as the leader of this, recognized him for the thug that he is."

As stated above, Ahmer's counsel interviewed both Rehman and his counsel before Ahmer's trial began.  Ahmer's counsel furnished an affidavit which was a part of the record in the habeas proceeding. In it, he stated that Rehman "was hasty to offer to testify in whatever way might be beneficial to [Ahmer] and his family" but when asked about the events that led up to Ahmer's arrival at the crime scene, Rehman did not want to talk about them.  Rehman's counsel, however, informed Ahmer's counsel that Rehman would not testify at Ahmer's trial, and, if subpoenaed, would invoke his Fifth Amendment privilege.

At Ahmer's sentencing hearing, Ahmer's counsel informed the court that he had experienced great difficulty in dealing with the family members.  He referred to his efforts in gathering the facts from them as akin to an "archaeological dig."  The trial court responded:  "Well, I really felt at trial that you were having a very difficult time because of the testimony of the family. . . . every witness that got on the stand blew up something."  In the habeas proceeding, the

14

court recalled that at trial, the witnesses were "[a]ll over the place."

In these circumstances, trial counsel's decision not to call Rehman as a witness may well be characterized as a sound tactical decision. Counsel could have no assurance what Rehman's testimony might be, but helpful or harmful, counsel could rest assured that it would be subject to devastating impeachment. Rehman might have given testimony favorable to Ahmer, but in that case the jury would have heard impeachment evidence equally or more damaging. In view of his prior statements, Rehman might also have proved directly hostile. Further, counsel could have no assurance that Rehman would testify at all. If he refused to testify, the effect of his invocation of the Fifth Amendment, if the jury were aware of it, would be unpredictable. Rehman's testimony would have "represented a 'two edged sword' that counsel often confront when constructing the strategy most likely to assist rather than harm a client." Lenz v. Warden of the Sussex I State Prison, 267 Va. 318, 337, 593 S.E.2d 292, 303 (2004).

A habeas petitioner making a claim of ineffective assistance must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, . . . the presumption that, under the circumstances, the challenged action might be considered sound

15

trial strategy." Strickland, 466 U.S. at 689 (internal quotation marks omitted). Ahmer has failed to overcome that presumption here. We hold that counsel's decision not to call Rehman as a witness fell within the range of reasonable professional assistance. We therefore do not reach consideration of the "prejudice" prong of Strickland in deciding Ahmer's assignments of error concerning counsel's decision not to call Rehman as a witness.

### D. Evidentiary Hearing

We find no merit in Ahmer's further contention that he was entitled to an evidentiary hearing. Code § 8.01-654(B)(4) provides that the court may decide the merits of a habeas petition "on the basis of the record" if the allegations can be "fully determined on the basis of recorded matters." Friedline v. Commonwealth, 265 Va. 273, 277, 576 S.E.2d 491, 493-94 (2003). Affidavits may be considered along with the record in deciding a motion to dismiss a habeas petition. Yeatts v. Murray, 249 Va. 285, 288-89, 455 S.E.2d 18, 20-21 (1995).

This is such a case. The record contains transcripts of the proceedings in Ahmer's trial and sentencing, the relevant parts of Rehman's trial and sentencing, Ahmer's appellate proceedings, and affidavits furnished by both trial and appellate counsel in Ahmer's case. We find that all issues

16

raised by Ahmer's habeas petition can be "fully determined on the basis of recorded matters."  Code § 8.01-654(B)(4).

Conclusion

Because Ahmer has failed to meet the two-part <u>Strickland</u> test as to either of his claims of ineffective assistance of counsel, and because no evidentiary hearing was necessary, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>