# CIRCUIT COURT OF MADISON COUNTY

Howard Z. Garnett, Jr.

v.

Gene M. Johnson, Director

February 7, 2013

Case No. CL09-2367

By Judge Daniel R. Bouton

The court has reviewed in its entirety the record in the above referenced case. The written arguments submitted by counsel have also been evaluated. Finally, the court has studied the cases and authorities cited by both sides. For the reasons set forth below, the petition for a writ of habeas corpus will be denied.

### Analysis

The principles of law that apply to the case were clearly established in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed, the petitioner must first prove that his counsel made errors so serious in nature that counsel was not functioning in a manner consistent with the defendant's Sixth Amendment rights. This is often referred to as the "ineffective assistance" prong of *Strickland*. Next, if Garnett establishes that counsel was ineffective, he must then prove that, but for the errors of his counsel, there is a reasonable probability that the result would have been different. This is often described as the "prejudice" prong of *Strickland*. Finally, all of the claims must be proven by a preponderance of the evidence. *Nolan v. Peyton*, 208 Va. 109 (1967).

Furthermore, in evaluating counsel's performance, the court must give consideration to a number of other important principles of law. First,

the court analyzes the facts of the case and views them at the time of counsel's conduct. *Murray v. Griffith*, 243 Va. 384 (1992). In doing so, the court does not grade counsel's performance. Rather, the petitioner has a Sixth Amendment right to have professional assistance within the range of competence required of attorneys in criminal cases. This general right must be applied to the specific claims made by him in this case. *Shaikh v. Johnson*, 276 Va. 537 (2008). Finally, the court takes into account all of the circumstances of the case in evaluating counsel's performance. *Bullock v. Carver*, 297 F.2d 1036 (10th Cir. 2002). This includes not only the allegations about what counsel should have done; it also includes what counsel actually did.

The court has addressed the petitioner's claims in light of the above principles. As required by Rule 3A:24, the court will also set forth its findings of fact and conclusions of law.

### The Claims Regarding the Failure To Present Certain Items of Evidence at Trial

Garnett identifies three ways in which he alleges that counsel was ineffective in failing to produce evidence: the testimony of Greg Bauer and Joe English, the information regarding the barn door and the "office" steps, and the April 29, 2003, receipt from Wetsel, Inc. The court finds that none of these claims satisfies either prong of the *Strickland* test.

First, the failure to call Greg Bauer and Joe English does not establish that trial counsel violated the first prong of *Strickland*. Rather, the court believes what Mr. Lawrence and Ms. Quagliana said about this; their decision not to call them as witnesses was part of their trial strategy and was based on their sound professional judgment. The record reflects that counsel had a number of sensible reasons for not calling them to the stand. In habeas corpus proceedings, the failure to summon or call witnesses is usually a matter of trial strategy that is within the reasonable judgment of counsel who are providing professional assistance. *Shaikh, supra; Davis v. Peyton*, 211 Va. 525 (1971).

Furthermore, had the witnesses been called, there is no reasonable probability that the result in the case would have been different. The witnesses saw nothing and heard nothing that occurred between the defendant and the victim. At best, they would have provided a general description of the area, and they would confirm that nothing alerted them to the events of the case. This evidence would not be sufficient to satisfy the second prong of the *Strickland* test.

With regard to the status of the barn door and the steps to the milking parlor, it should first be noted that the court rejects Garnett's testimony about this subject. Specifically, the court finds that his attorneys were never provided with evidence that the barn door was somehow bolted or nailed shut at the time of the incident. They were also never advised that no steps

were located on the "office" side of the barn. Therefore, the court does not believe that counsel were even aware of this evidence at trial. In support of its findings, the court first notes that counsel actually used photographs at trial that had been reviewed and approved by Garnett. The jury inspected the photos, and the witnesses were examined about them. Garnett had full knowledge of this; yet he claimed at the hearing on his petition for habeas corpus relief that he had supplied his attorneys with different information that was more favorable to him than the evidence contained in the photographs that were actually introduced. Such testimony is simply not credible. As a result, the court finds no basis to conclude that counsel was deficient under *Strickland*. They relied on the evidence that was approved and supplied by the defendant. Finally, had such evidence been introduced, there is no reasonable probability that the result would have been different. On this point, the court adopts as persuasive the arguments contained on pages 8-9 of the Respondent's Proposed Findings of Fact and Conclusions of Law.

Turning to the evidence of the April 29, 2003, receipt from Wetsel, Inc., Garnett claims that the failure of counsel to use this document at trial was ineffective assistance under *Strickland*. Yet Garnett concedes that the jury acquitted him of the charges for April 29th. For purposes of his claim for habeas corpus relief, however, he asserts that this document would have had an impact on the jury's decision regarding the July 24th charges. He maintains that the introduction into evidence of the receipt dated April 29th would have been reasonably expected to lead to a different result for the charges that were alleged to have occurred on July 24th.

According to Garnett, the way in which this would have occurred is that the receipt would have made a critical difference as to why the jury acquitted him of the April 29th incident. Specifically, if the document had been used, the acquittal would not simply be based on reasonable doubt. Rather, the jury would have found that the victim had possibly committed perjury about what happened on April 29th. In turn, this finding by the jury would have so diminished the credibility of the victim that there is a reasonable probability that they would have acquitted him of the July 24th charges. The crux of this argument is that counsel was ineffective because the acquittal they achieved on the April 29th charges was not a strong enough acquittal. Even though the record clearly establishes that counsel pursued many avenues of impeachment and fully challenged the credibility of the victim, their assistance was not effective enough to pass constitutional muster. Garnett explains his reasoning as follows:

> There is a distinction between the finding of not guilty as to the alleged April 29th rape and irrefutable evidence of perjury committed by Duff as to the alleged April 29th rape. In other words, it is one thing to say that a jury did not believe Duff's testimony enough to find proof of guilt beyond a reasonable doubt, but it is quite another thing to say that the jury would

have evidence that Duff committed perjury by fabricating what occurred on April 29th. . . .

Certainly, if the jury determined that Duff was the type of person who would take the witness stand and commit perjury, as well as manufacture false evidence (e.g., photographs of fabricated injuries) in an attempt to convict a man of a charge which could carry a life sentence, this determination would certainly have an impact on the jury's deliberations as to the alleged July 24th rape. . . .

In other words, although the jury acquitted the petitioner of Duff's accusations regarding April 29th, the proof that Duff was not only insufficiently credible, but also had manufactured evidence would have influenced the jury's determination of Duff's credibility regarding the July 24th allegations. . . .

Accordingly, counsel was deficient in failing to use the available impeachment evidence which have virtually destroyed Duff's trial testimony, and there is a reasonable probability that one or more jurors would have a reasonable doubt as to the July 24th allegations.

(Petitioner's Proposed Findings of Fact and Conclusions of Law, pp. 3-5.)

In evaluating this claim, the court must stress that, for Garnett to prevail, the jury would have been required to assess the victim's testimony exactly as he describes it in his written arguments. As a result, the court must find that the use of the document would have led the jury to conclude that the victim had possibly perjured herself on this subject. The court would then have to find that the jury would have decided to use this evidence in their deliberations regarding the July 24th charges. Finally, the court would have to find that in applying the April 29th evidence to the July 24th charges, it is reasonably probable that the jury would have reached a different result.

The principal flaw in Garnett's argument is that, even if this evidence had been before the jury, it could have been analyzed in a number of ways. Here, the document does not provide definitive proof that Garnett and the victim were at Wetsel's in Harrisonburg on April 29th. On this point, the document does not state that they were at that location. Furthermore, no witness at trial or at the habeas corpus proceeding testified to this effect. In particular, no witness from Wetsel's provided any testimony that would shed any light on the document or explain any of the information on it. Thus, the jury might have interpreted the receipt as indicating when the purchased items were delivered to the property in Madison. Alternatively, the jury might have been unsure what meaning, if any, to attach to this evidence. They might have simply discarded it or excluded it as a factor in

their deliberations. On the other hand, they might have decided to weigh it only in connection with the events of April 29th. Thus, the failure to use the document was not ineffective assistance under *Strickland*.

Furthermore, based on the above analysis, there is no basis to find that the second prong of *Strickland* has been violated. The court would have to guess or speculate about the meaning the jury would have given to this document. With or without the receipt, the jury might have found the victim generally credible; might have found that not all of what she said was accurate; might have found that she was not credible about some things; might have believed most but not all of what she said; or might have simply been unsure about some of her testimony. All of these possibilities were within the jury's discretion. Under Virginia law, it is well established that the jury may accept, in whole or in part, the testimony of any witness as deemed appropriate. In this context, it is also critical to emphasize that the jury had every right to reach different verdicts on the various charges. That they convicted the defendant on some counts but found that there was reasonable doubt on others in no way demonstrates that counsel was ineffective. Therefore, the court finds that there is no reasonable probability that the evidence of the receipt would have led to a different result.

### The Failure of Garnett To Testify

In order to rule on this claim, the court must resolve the factual dispute about what occurred among Garnett and his attorneys on the issue of whether he should have testified in his own defense. On this issue, the court cites the testimony of Mr. Lawrence. (Transcript, p. 281, lines 20-25, p. 282, line 1-18.) Mr. Lawrence explicitly confirmed that Mr. Garnett was advised of his right to testify. Mr. Lawrence said that the subject matter of his testimony was discussed on multiple occasions, both before and during the trial. He also confirmed that Mr. Garnett made his own decision about this matter. The court finds credible and believes in its entirety all of Mr. Lawrence's testimony on this topic.

The testimony given by Ms. Quagliana corroborated what was said by Mr. Lawrence. She also verified that there were several conversations with Garnett about whether or not he should testify at trial. She stated that they were all in agreement with his decision not to testify. (Transcript pp. 273-76.) The court accepts as credible all of the testimony of Ms. Quagliana that corroborates Mr. Lawrence's clear version of events. Finally, the court rejects all of those portions of the testimony of Mr. Garnett on this subject that differ from what was offered by his attorneys.

Based on the above factual findings, the court concludes that Garnett knowingly, voluntarily, and intelligently made his own decision to waive his right to testify. He was not coerced or prevented from taking the stand. Furthermore, any legal advice given to him by counsel does not constitute ineffective assistance. Here, the court adopts the arguments made by

Ms. Armstrong on pages 13-14 of the Respondent's Proposed Findings of Facts and Conclusions of Law.

Finally, the court finds no reason to believe that Garnett's testimony would have probably led to a different result. He could have been impeached by a number of inconsistent statements, some of which are noted by Ms. Armstrong in her written arguments. The court would have to speculate to find that his testimony would be viewed as credible and that it would have probably led the jury to have a reasonable doubt about the July 24th charges. As a result, the court finds that Garnett has not satisfied either prong of the *Strickland* test in connection with his right to testify. He is thus not entitled to any relief based on this aspect of his claim.

### Aggregate Prejudice

The court rejects the petitioner's argument on this issue because Virginia does not recognize this theory of relief in habeas corpus proceedings. *Lenz v. Warden of the Sussex I State Prison,* 267 Va. 318 (2004). However, if the court is incorrect and must apply the "aggregate prejudice" standard, it has not been met in this case. This was a long, hotly contested trial in which defense counsel attacked the credibility of the victim in multiple ways. She was impeached with evidence that pertained to bias, motive, and inconsistent statements. In addition, the defense introduced evidence of its own to challenge the Commonwealth's case and to establish that there was reasonable doubt. The defendant was convicted, but he was also acquitted of some of the charges. The record here does not demonstrate errors by counsel that would have established aggregate prejudice. Rather, it proves that the efforts of defense counsel easily satisfied the standard of representation to which Garnett was entitled under the Sixth Amendment.

### Conclusion

The petition for a writ of habeas corpus will be denied.